ARTHUR W. NICOLLS, Appellee, v. PEARL NICOLLS, Appellant.

No. 40449.

1194

March 10, 1931.

*Brackney, Farr & Stockman,* for appellant.

*George A. Wilson* and *Tom K. Murrow,* for appellee.

Kindig, J.—On October 17, 1928, in an action then pending in the Polk County district court, a divorce was granted the defendant-appellant, Pearl Nicolls, freeing her from the bonds  of matrimony then existing between her and the plaintiff-appellee, Arthur W. Nicolls. These parties have no children as the fruit of their marriage. As part of the above-named judgment for divorce, the appellant was granted the

following three items of alimony: First, $1,000 in cash; second, $50 per week during appellant's life; and third, insurance policies on appellee's life, payable to appellant as beneficiary. These policies were delivered in escrow for appellant's benefit. To protect the insurance policies, it was decreed that the appellee pay the premiums thereon, which he did until the commencement of the present action.

Conforming further to the foregoing judgment and decree, the appellee paid the $1,000 in cash on or about the date of the judgment, and the $50 weekly alimony payments were duly made by the appellee until on or about May 20, 1929, at which time the appellee brought the present proceedings to modify the judgment and decree aforesaid, allowing the above-named alimony. The basis for such modification is changed conditions and circumstances, making it inequitable for appellee to pay appellant the original alimony. It is alleged by the appellee that the changed conditions and circumstances are: First, that, while he was earning $175 a week at the time the divorce decree was entered, his income now is only $150 per month; and second, that his hearing is now defective, and he cannot hold as profitable a position as that filled when the divorce decree was entered.

By way of answer, the appellant declares that there are no changed conditions and circumstances, and appellee is not entitled to the relief demanded, because he has remarried. Furthermore, it is claimed by appellant that the parties stipulated for the alimony, and therefore the appellee is bound thereby during appellant's lifetime. Continuing her answer, the appellant asserts that appellee's present action was prematurely brought, because, at the institution thereof, there were no changed circumstances, even though such conditions may have developed later.

Upon those issues the district court modified the decree in these particulars: First, the weekly alimony allowance was reduced from $50 to $25 per week; and second, the appellee was commanded to maintain for appellant $10,000 of insurance on his life, rather than $15,000. This $10,000 policy, as provided in the original judgment and decree, was ordered held in escrow for appellant's benefit. From the foregoing action of the district court in thus modifying the judgment and decree, the defendant appeals.

A complaint is also made by appellant because the district

court refused to allow her attorney fees in defending this modification suit.

I. Was there a sufficient basis for modifying the original judgment and decree relating to alimony? Section 10481 of the 1927 Code provides:

"When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right. *Subsequent changes may be made by it in these respects when circumstances render them expedient.*" (The italics are ours.)

While discussing this subject-matter in *Newburn v. Newburn*, 210 Iowa 639, we said, on page 641:

"The statute, Section 10481, authorizes the court, upon proper application, after a divorce decree has been granted, to modify the same, upon proof of substantial changes in the circumstances of the parties which render such modification expedient. This statute has been many times considered and applied by this court. It has always been held that the original decree is conclusive upon the parties as to the then circumstances of the parties, and that the power to grant a modification in the decree is not a power to grant a new trial, or to retry the same issues, but only to adapt the decree to the changed conditions of the parties."

Likewise, in *Neve v. Neve*, 210 Iowa 120, we declared, on page 122:

"Material and sufficient subsequent facts and circumstances must appear after the original decree and judgment, before it can be modified or changed. * * * A new trial is not permissible, under the statute [10481] above quoted. Therefore, the parties are concluded by the original decree, so far as the then existing circumstances are concerned. * * * The italicized portion of the Code section previously mentioned [the one italicized in this opinion] makes essential material and adequate facts and circumstances arising after the original judgment and decree. Also, those facts and circumstances must be such as to 'render expedient' a modification of the original judgment and decree. * * * Without such prerequisite, there can be no modification. When, however, there are, in fact, subsequent changes in the 'circum-

stances,' as contemplated by the legislature, the former judgment and decree may be modified * * *.''

Consequently, it is necessary in the present controversy to determine whether there appear within the record "circumstances which render expedient a change in the original judgment and decree." Manifestly, such circumstances are shown in the record. When the original judgment and decree was entered, appellee earned a salary of $175 per week; but now he is receiving only $150 per month. Under the original employment, appellee had an annual income of $9,187.50, while now his yearly earnings amount to only $1,800. The difference between the previous and present income is $7,387.50. Obviously, the circumstances have materially changed, and appellee's ability to pay alimony is entirely different now than when the original judgment and decree was entered.

According to the original judgment and decree, appellant was granted $50 per week alimony, or considerably more than $200 per month. That exceeds appellee's present yearly income over $600. Such was the condition of appellee's income at the institution of the present action to modify the original judgment and decree. Subsequent events have demonstrated the truth of that fact. Appellant has in no way effectively contradicted or overcome appellee's testimony in this regard. Not only is that true, but circumstances corroborate appellee in his contention concerning his inability to procure more remunerative employment.

Appellee now lives in Minneapolis, Minnesota; while, at the date of the original judgment and decree, he resided in Des Moines, Iowa, where he was employed by the Paramount Famous Lasky Corporation. For some reason, appellee was discharged by his employer. Before dispensing with appellee's services, the Paramount Famous Lasky Corporation received a letter from appellant, suggesting that appellee was not properly serving the company. Possibly this was not the sole reason for appellee's discharge, but it is a circumstance in the chain of events. Concerning his later employment, the appellee testified:

"Immediately after I lost my employment with Paramount [Paramount Famous Lasky Corporation], I knew I had quite an obligation, taking care of my $50 a week alimony. I knew

I had to get a better than $50 a week job. I tried a promoter job, through the independent theater folks. I worked April, May, June, and possibly July, with what money I had left, to promote this jobbing, thinking it would amount to something. It didn't amount to anything at all. Today it is paying me $150 a month. * * * I have tried every possible chance to get other positions, from selling peanut machines down. I have tried all the film exchanges. I even tried to promote a little restaurant. I tried to get a job with Pathe, R.K.O., First National, Tiffany, Stall, and Western Electric, and the Vitaphone People, United Artists.''

In corroboration of the foregoing, there were introduced in evidence letters and telegrams sent to the various companies by appellee, as applications for positions. Also, the record contains letters and telegrams in reply to appellee's requests. Each request was refused. Because of his defective hearing, appellee fears that he will not be able to again procure a position equal to that formerly held by him. Upon this subject, appellee testified:

''My physical incapacities are deafness and rheumatism. * * * Q. And you still think you will eventually be able to get on a high salary basis? A. No, I will never get back where I was. I can't get a $75 a week job—I have tried it. My extent is now $150 [per month], or I might eventually work into a [$200 a month] job. That is about my limit today. The producers don't want me. They want young fellows,—fellows who can hear. That is about the whole story.''

It appears that appellee is about 45 years old now. While there is some testimony indicating that appellee perhaps has been extravagant, there is nothing to show that, under the changed circumstances, he is able to pay $50 per week alimony. Nor does it appear that, under those conditions, appellant is entitled to receive more than that given her by the modified judgment and decree. If, in the future, conditions again materially change, and equity demands that appellant should receive more alimony than that granted under the modified judgment and decree, an adjustment can be made, under the foregoing statute. *Morrison v. Morrison*, 208 Iowa 1384 (local citation 1388).

II. Furthermore, the district court was justified in reducing the insurance on appellee's life from $15,000 to $10,000. $5,000 of the insurance provided in the original judgment and decree became inoperative because appellee was discharged by the Paramount Famous Lasky Corporation. Apparently that particular insurance was known as "group," which may be carried by an employer over a number of its employees. The remaining $10,000 of the insurance is carried with old-line life insurance companies.

Under present conditions, appellee will not be able to pay premiums on more than the $10,000 insurance. Appellant's alimony at the rate of $25 per week will amount to more than $100 per month. When that sum is subtracted from appellee's present income, he will have remaining something less than $50 per month. Out of this remainder, he must pay the insurance premiums and support himself. General equitable relief was asked by appellee in his petition, which is broad enough to cover the insurance item. Consequently, the district court properly adjusted the insurance.

III. After the divorce was granted appellant, the appellee again married, at Kansas City, Missouri, and is now supporting his second wife. Because of the second marriage, appellant contends that appellee is not entitled, under any circumstances, to have the original judgment and decree modified.

This is not the law. Although having married the second time (see *Dudley v. Dudley*, 151 Iowa 142), appellee can obtain a modification of the original judgment and decree for alimony, provided that his evidence meets the statutory requirements. *Morrison v. Morrison* (208 Iowa 1384), supra; *Farrell v. Farrell*, 190 Iowa 919; *Newburn v. Newburn* (210 Iowa 639), supra. During our discussion in the *Newburn* case, supra, we said, on page 642:

"The only remaining proposition to be discussed is the effect of appellee's remarriage and the obligations assumed thereby. Appellee must be held to have known of the provisions of the decree to which he agreed, and of the obligations imposed thereby, at the time he remarried. His right to remarry is not questioned, nor are the rights and necessities of the new family

to be minimized. Perhaps a case might arise in which the facts and circumstances shown in favor of the husband against whom a judgment for alimony exists, would make proper a consideration of his remarriage, in the adjustment of equities on an application to modify the decree. There is some diversity in the holding of courts in other jurisdictions upon this question. All, however, agree that the remarriage of the husband, together with the obligations thereby assumed, will not alone present such change in the circumstances of the parties as to justify a modification of the decree.''

So, while the fact of remarriage itself is not to be considered as a subsequent change of circumstances sufficient to obtain a modification of the decree allowing alimony, yet, if there are later facts and circumstances growing out of any cause, amounting to ''changes'' (see Section 10481, 1927 Code), rendering a modification expedient, then such relief will be granted.

IV. Moreover, it is claimed by appellant that the original judgment and decree was entered upon the stipulation of the parties, and therefore it rises to the dignity of an enforcible  contract. There being a contract supporting the alimony, appellant maintains, Section 10481 of the 1927 Code does not in any way tend to overcome such agreement.

Clearly, this position is not tenable. The so-called stipulation in this case, as is always done, was made subject to the approval of the district court. When such stipulation was filed, the district court then entered a judgment and decree fixing the alimony. Said judgment and decree amounts to such, regardless of whether or not there was a stipulation of alimony previously filed. That stipulation became merged in the judgment and decree. *Delbridge v. Sears,* 179 Iowa 526 (local citation 535). Therein we said:

''Whatever this agreement [the stipulation for alimony] was, upon which the court acted, it is apparent that it antedated the decree, and was merged in the decree. The court had no power to go back of the original decree and make a finding other and different from that which was the basis of the original decree.''

See, also, *Kinney v. Kinney,* 150 Iowa 225, and *Morrison v. Morrison* (208 Iowa 1384), supra.

V. After arguing the merits of the controversy, as above related, appellant next contends that the district court should be reversed because it did not allow her attorney fees in the present proceeding. In *Barish v. Barish,* 190  Iowa 493, we declared, on page 500:

"We are asked to tax an attorney fee in favor of the attorneys for the appellant [in a modification case]. She [appellant] is no longer the wife of the appellee. Section 3177 of the Code of 1897 [now Section 10478 of the 1927 Code] provides that: 'The court may order either party to pay the clerk a sum of money for the separate support and maintenance of the adverse party and the children, and to enable such party to prosecute or defend the action.' We hold that neither this nor any other statute gives this appellant any better claim to the taxation of an attorney fee than is given any litigant who seeks to make a money recovery without having a contract for the taxing of attorney fees."

Here, in the case at bar, the situation is similar to that presented in the *Barish* case, and the discussion in that case, as above quoted, disposes of the present dispute.

Wherefore, the judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

FAVILLE, C. J., and EVANS, MORLING, and GRIMM, JJ., concur.