**In re the MARRIAGE OF Kevin Lee BALES and Annette Marie Bales**

**Upon the Petition of Kevin Lee Bales, Petitioner–Appellee,**

**And Concerning Annette Marie Bales, Respondent–Appellant.**

**No. 88–940.**

Court of Appeals of Iowa.

Feb. 23, 1989.

Curtis J. Klatt of Dunakey & Klatt, Waterloo, for respondent-appellant.

David R. Zellhoefer of Zellhoefer Law Offices, Waterloo, for petitioner-appellee.

Considered by SCHLEGEL, P.J., and HAYDEN and HABHAB, JJ.

HAYDEN, Judge.

Kevin and Annette (Ann) Bales were married on January 13, 1984. Their one child, Amelia, was born August 24, 1984. They separated in 1987. The parties were granted a dissolution of marriage May 10, 1988.

The district court granted the parties joint legal custody and awarded physical care of Amelia to Kevin. Ann was ordered to pay Kevin $200 per month child support for Amelia. Ann was granted liberal visitation rights. We affirm.

Our scope of review is de novo. Iowa R.App.P. 4. We give weight to the fact findings by the trial court but are not bound by them. Iowa R.App.P. 14(f)(7).

Kevin worked out of town for a construction company for a few years, but is now attending the University of Northern Iowa full time. He plans to graduate with a degree in computer science in 1990. Kevin earns between $3,600 and $4,800 per year working part-time. When Kevin went back to school Ann began working full time at Bertsch Cabinet Company, where her gross annual income was $15,912. After the parties separated Ann left that job and is now working part-time for a greenhouse, where her net annual salary is about $5,900. Ann has taken some college classes in business.

The facts of this case show both parties have been involved in use of illegal drugs. Kevin seems to have curtailed his use of drugs. Ann, on the other hand, has not. She continues the use of marijuana regularly.

In addition, we find, as did the trial court, both Kevin and Ann are good parents. Both can provide the basic child care needs of the child. Both are loving and caring in their relationship with Amelia and they are responsible in their roles as parents. Amelia appears to be a gifted child and both parents will emphasize education in her upbringing. Kevin and Ann are intelligent and hard-working adults. Ann has made numerous changes in her behavior in anticipation of the custody trial, including an attempt to discontinue her drug abuse.

The trial court predicted Ann would return to her prior patterns of behavior after the custody trial is over. We find ample support in the record for this concern. The record also shows Ann refused to communicate with Kevin during times they were having serious marital problems. Many of their problems resulted from Kevin's objection to Ann's regular use of marijuana. She refused to discuss it with him and perceived he was persecuting her.

Ann attempted to portray Kevin as a violent and abusive person. On this account the trial court found Ann not credible and so do we upon our review. Ann has resorted to physical abuse more often than has Kevin. Kevin has never directed any physical actions toward Amelia. Ann has slapped Amelia's face on numerous occasions.

We acknowledge Ann is a better cook, housekeeper, and general homemaker than Kevin. However, we determine Kevin can provide adequately for Amelia in these respects.

In *In re Marriage of Winter*, 223 N.W. 2d 165, 166–67 (Iowa 1974), the Iowa Supreme Court repeated the summarized general principles applicable to the custody issue stated in *In re Marriage of Bowen*, 219 N.W.2d 683, 687–88 (Iowa 1974):

"Our review is de novo. Although we are not bound by trial court findings we give them weight. The status of children should be quickly fixed and, thereafter, little disturbed. Siblings should usually not be separated. No hard and fast rule governs which parent should have custody. It is not a matter of reward or punishment. The issue is ultimately decided by determining under the whole record which parent can minister more effectively to the long-range best interests of the children."

These principles must be applied in light of a number of factors in each case. These factors include:

1. The characteristics of each child, including age, maturity, mental and physical health.

2. The emotional, social, moral, material, and educational needs of the child.

3. The characteristics of each parent, including age, character, stability, mental and physical health.

4. The capacity and interest of each parent to provide for the emotional, social, moral, material, and educational needs of the child.

5. The interpersonal relationship between the child and each parent.

6. The interpersonal relationship between the child and its siblings.

7. The effect on the child of continuing or disrupting an existing custodial status.

8. The nature of each proposed environment, including its stability and wholesomeness.

9. The preference of the child, if the child is of sufficient age and maturity.

10. The report and recommendation of the attorney for the child or other independent investigator.

11. Available alternatives.

12. Any other relevant matter the evidence in a particular case may disclose.

Determining what custodial arrangement will best serve the long-range interest of a child frequently becomes a matter of choosing the least detrimental available alternative for safeguarding the child's growth and development. *Id.* at p. 167.

■ We agree with the trial court, in considering the evidence as a whole, it is in the best interest of the minor child, Amelia, both parents be awarded joint custody with her physical care and placement with Kevin. Ann shall have liberal rights of visitation as may be agreed between the parents.

We also support the trial court in designating the following times and days for visitation in the event the parents do not agree:

Ann shall have visitation alternate weekends from 5:00 p.m. Friday through 7:00 p.m. Sunday; alternating holidays; and three weeks to be exercised during the months of June, July and August. In the summer of Amelia's sixth birthday the summer visitation shall be extended from three weeks to six weeks. Ann shall give Kevin at least four weeks' notice of when she will be exercising the summer visitation.

The holiday visitation shall include Christmas Day and one-half of Christmas school vacation which includes Christmas Day, Easter, spring break from school, and Labor Day in even-numbered years. Holiday visitation shall include one-half of the Christmas school vacation which does not include Christmas Day, Independence Day, Memorial Day, Thanksgiving, and Amelia's birthday in odd-numbered years. Where legal holidays fall on Friday or Monday, Amelia will spend the three-day weekend with the parent designated according to the above schedule. Kevin shall have at least two full weekend visitations with Amelia during the six-week visitations that commence with the summer of her sixth birthday.

■ We also determine the record and facts of this case support the trial court's finding Ann intentionally reduced her income and was under-employed at the time of trial. She quit her job at Bertsch Cabinet Company where she earned in excess of $15,000 annually, or $306 per week. Her earnings at the greenhouse part-time work is approximately $5,900 per year. Ann is living with her boyfriend and quit Bertsch Cabinet when her boyfriend was rehired by John Deere Company. Based upon Ann's earning capacity, we hold $200 per month child support is reasonable and not excessive.

Costs of appeal are assessed against respondent-appellant.

AFFIRMED.