**In re the Marriage of Gary Robert LEE, Petitioner, Relator,**

v.

**Carol Ann LEE, Respondent.**

**No. C4–90–262.**

Court of Appeals of Minnesota.

Aug. 21, 1990.

Review Denied Oct. 18, 1990.

Philip N. Scheide, Scheide, Smith & Lofstrom, Eagan, for relator.

James C. Backstrom, Dakota County Atty. and Stuart E. Shapiro, Asst. Dakota County Atty., Hastings, for respondent.

Considered and decided by SCHUMACHER, P.J., and HUSPENI and SHORT, JJ.

## OPINION

HUSPENI, Judge.

Relator moved for reduction of his child support obligation, using a new procedure

under Minn.Stat. § 518.551, subd. 10 (Supp. 1989). This procedure substitutes an administrative law judge (ALJ) for the family court. Relator argues that the ALJ erred in refusing to reduce his child support obligation, alleging that the ALJ'S determination that relator unjustifiably limited his income is not supported by the evidence. We reverse and remand.

### FACTS

A decree dissolving the marriage of relator Gary Robert Lee and respondent Carol Ann Lee was entered in February 1987. Under the decree, relator's net monthly income was found to be $2,187, legal custody of four minor children was granted to the parties jointly, and physical custody was granted to respondent. Two of the parties' children have costly health problems. In April 1989 a cost-of-living adjustment increased relator's monthly child support obligation from $850 to $926.50 excluding various insurance requirements.

During fall 1989 the relator's employer determined that relator had taken excessively long lunch breaks and gave relator the option of resignation or termination. The Minnesota Department of Jobs and Training denied relator unemployment compensation stating:

THE CLAIMANT RESIGNED WHEN HIS ONLY OPTION WAS TO BE TERMINATED BECAUSE HE VIOLATED A REASONABLE WORK RULE BY TAKING EXTENDED LUNCH BREAKS WITHOUT PERMISSION. THE CLAIMANT STATES HE WAS AWARE THAT HE WAS ALLOWED A ONE–HALF HOUR LUNCH BREAK AND HE KNOWINGLY VIOLATED THIS POLICY BY TAKING SEVERAL LUNCH BREAKS THAT WERE ONE HOUR AND FORTY–FIVE MINUTES IN LENGTH. HE DID NOT FEEL THIS WAS A SERIOUS INFRACTION BECAUSE HE COULD BE REACHED DURING THAT TIME. THE CLAIMANT'S ACTIONS DEMONSTRATED A WILLFUL DISREGARD OF A REASONABLE POLICY THAT WAS KNOWN TO HIM. THE CLAIMANT WAS TERMINATED DUE TO WILLFUL MISCONDUCT.

(Emphasis added.) Subsequently relator moved for a reduction of his child support based on his substantially reduced income. After failing to pay a health insurance premium so that there was no health insurance coverage as of November 1, 1989, relator obtained a loan to cover November–December premiums.

At the hearing before an ALJ, relator proceeded pro se and testified that his resignation was a result of a mental breakdown and that he had been in therapy. Relator did not provide documentation to support these claims, stating that he assumed this was in his file. Regarding employment, relator testified that he had obtained a job guaranteeing him 15 hours per week at $5.15 per hour, that he was seeking full-time employment, but had not received a job offer. Relator requested that his child support obligation be reduced to zero and that he be required to pay only one-half of the monthly health insurance premium of $338. He testified that if this was not done he would have to file for bankruptcy.

The ALJ concluded that

5. The change in [relator's] income is due solely to his resignation based upon his own on-the-job misconduct.

6. Although [relator's] income has significantly decreased since the entry of the Judgment and Decree, because the decrease was a voluntary reduction and not made in good faith, it does not make the prior order for support unfair or unreasonable and does not support an order for modification.

7. [Relator's] income was unjustifiably self-limited and the Court may therefore look at his earning capacity in setting or modifying child support. [Relator's] earning capacity is clearly in the range of $38,000 per year based on his former rate of pay * * *.

8. [Relator] has not met his burden to show that the prior order was unfair or unreasonable and the prior order should continue in full force and effect.

Further, the ALJ's memorandum accompanying the denial of relator's motion for a reduced child support obligation stated:

It is undisputed that [relator] has experienced a significant change in his income since the prior order for support. However, he failed to show to the [ALJ] that, because of the circumstances of his income decrease, the prior order is rendered unfair. * * *.

[Relator's] loss of employment * * * was through his own willful misconduct. Such an action will not support a modification of the child support award.

(Citation omitted.)

On February 2, 1990, relator's petition for certiorari was granted.

### ISSUES

1. What is the proper standard of review?

2. Are the trial court's findings supported by the evidence?

### ANALYSIS

#### I.

Respondent sought review of a proceeding conducted under Minn.Stat. § 518.551, subd. 10 (Supp.1989) which reads:

An administrative process is established to * * * modify * * * child and medical support orders.

> \*     \*     \*     \*     \*     \*

The hearings shall be conducted under the rules of the office of administrative hearings, Minnesota Rules, parts 1400.-7100 to 1400.7500, 1400.7700, and 1400.-7800 * * *. All other aspects of the case, including, but not limited to, pleadings, discovery, and motions, shall be conducted under the rules of family court, the rules of civil procedure, and chapter 518. The administrative law judge shall make findings of fact, conclusions, and a final decision and issue an order. Orders issued by an administrative law judge are enforceable by the

contempt powers of the county and district courts.

*The decision and order of the administrative law judge shall be a final agency decision for purposes of sections 14.-63 to 14.69.*

(Emphasis added.)

Initially we must determine the proper standard of review for this case. Traditionally, a child support modification ruling is disturbed on appeal only if the trial court abused its discretion. *See Moylan v. Moylan*, 384 N.W.2d 859, 864 (Minn. 1986) ("the decision to modify a child support order lies in the broad and sound discretion of the trial court and, an appellate court will reverse for an abuse of that discretion only where it finds a 'clearly erroneous conclusion that is against logic and the facts on record' ") (citation omitted). However, if the ALJ's ruling is treated as an agency determination, the standard of review would be that set out in Minn.Stat. § 14.69 which reads in pertinent part:

[T]he court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

*Polk County Services v. Clinton*, 459 N.W.2d 362, 364 (Minn.App.1990), released herewith, addresses a 1990 amendment to Minn.Stat. § 518.551, subd. 10 and finds that amendment to be a clarification of the statute and therefore retrospectively applicable.[1] We note that a retrospective appli-

---

1. Effective May 4, 1990, section 518.551, subd. 10 reads as follows:

The decision and order of the administrative law judge is appealable to the court of appeals

cation of the amendment would support utilization of the traditional child support modification standard of review here.

We recognize the unique posture created when we apply the traditional standard of review to a matter which, as here, has reached this court as a result of relator's petition for a writ of certiorari. We recognize, also, that a strict retrospective application of amended subdivision 10 would result not only in applying the traditional standard of review but in requiring that review of the ALJ's decisions be properly sought only by direct appeal and not by petition for writ of certiorari. However, relator sought review under the only statutory procedure available to him in February 1990. Contrasting the original and amended versions of section 518.551, subd. 10, we cannot conclude that relator's compliance with the version of the statute in effect in February 1990 precludes this court from applying the standard of review which has been appropriate historically and is appropriate under the amended statute.

### II.

■ Relator alleges that the ALJ abused her discretion in equating termination-inducing misconduct with a voluntary quit and in admitting as evidence the unemployment compensation decision. Relator argues that this document was inadmissible because it was hearsay and lacked foundation, and for various other reasons. We disagree.

Under Minn.Stat. § 558.551, subd. 10 "[t]he hearings shall be conducted under rules of the office of administrative hearings, Minnesota Rules 1400.7100 to 1400.-7500." Under Minn.R. 1400.7300, subpt. 1 (1989):

> The judge may admit *all evidence which possesses probative value,* including hearsay, if it is the type of evidence on which reasonable, prudent persons are

accustomed to rely in the conduct of their serious affairs.

(Emphasis added.) Under the rule's loose evidentiary standards, the ALJ did not abuse her discretion in admitting the challenged document. Further, relator himself explicitly stated that he had no objection to the document's admission and made no post-hearing motions regarding it.

Relator also objects that several of the ALJ's findings are without support on the record. Relator's complaints about the ALJ's findings regarding his established earning capacity are without merit. Relator's earnings were originally established in the unappealed dissolution decree and that determination is now final. *See* Minn. Stat. § 518.145, subd. 1 (1988). Whether relator's original earning capacity has subsequently changed is dependent upon whether or not his departure from the employment he held during the marriage and after was in bad faith.

■ Regarding relator's employment, the ALJ found:

> On October 13, 1989, after 16 years of employment * * * [relator] *voluntarily resigned* his position. He resigned when *his only option was to be terminated* because he violated a work rule by taking extended lunch breaks without permission. He was denied unemployment compensation on the grounds that he was terminated due to willful misconduct. After resignation * * * [relator] commenced payments of $338 per month to maintain health insurance coverage for himself and his children.

(Emphasis added.) This finding is internally inconsistent. Relator was given no choice but to cease working for his employer. His resignation upon receipt of the notice does not constitute a voluntary termination. Even the unemployment compensation decision recognized this fact in stating "[t]he claimant *was terminated*

in the same manner as a decision of the district court.
1990 Minn.Laws ch. 568, art. 2 § 72 (to be codified at Minn.Stat. § 518.551, subd. 10 (1990)). Under a retrospective application of

this amendment "relator" is technically an "appellant" but for purposes of consistency in this case, we shall continue to refer to Gary Lee as "relator."

due to willful misconduct" (emphasis added).

■ Even assuming the willfulness of relator's on-the-job misconduct (taking one-and-a-half hour lunch hours), we are cited to no authority which permits a tribunal to equate willful misconduct with voluntary termination where there is no evidence that the misconduct was an attempt to induce termination and thereby avoid a child support obligation. Because this case does not involve provocation of a discharge in order to avoid child support obligations, we must reject the ALJ's determination that relator's "willful misconduct" precluded consideration of his motions for modification of child support. *See Giesner v. Giesner,* 319 N.W.2d 718, 719–20 (Minn.1982) ("Inasmuch as the trial court did not evaluate appellant's subjective intent in [leaving his old job and] starting a new business, we must remand the matter for further proceedings, wherein that subjective intent will be considered").

We remand for reconsideration of relator's motion with recognition that his departure from employment was not voluntary. The ALJ, on remand, shall not be precluded from evaluating relator's efforts to seek reemployment.

■ Relator also objects to the ALJ's finding that:

> [Relator] claims that his resignation was caused by a nervous breakdown. However, he brings no evidence of his medical condition or any disability he currently suffers which would prevent him from working. In addition, he failed to provide this tribunal with any evidence of his attempts to find substitute work for which he is qualified.

Relator points out that he did furnish evidence of his condition by testifying that his termination was the result of a mental breakdown. He also points out that he thought that his records contained medical documentation regarding his alleged breakdown.[2] On remand the ALJ shall have the discretion to permit relator to introduce evidence regarding his alleged breakdown.

Given our resolution of the above issues, we need not address relator's claim that he was unaware that an evidentiary hearing would occur or that he was denied due process of law therein.

## DECISION

Review of this case under the abuse of discretion standard is appropriate. The ALJ abused her discretion in concluding that relator voluntarily terminated his employment. Therefore, we reverse and remand for reconsideration of relator's motions on bases not inconsistent with this opinion.

Reversed and remanded.

**2.** To the extent that relator argues that he cannot be expected to call expensive expert witnesses to testify because of his impaired finances, we note that the relaxed evidentiary rules of administrative proceedings, *see* Minn.R. 1400.-7300, subpt. 1 (1989), would not require actual expert testimony if appropriate documentation is available.