In re the MARRIAGE OF Carla L. FOLEY and Kenneth P. Foley, Jr.,

Upon the Petition of Carla L. Foley, Appellee,

And Concerning Kenneth P. Foley, Jr., Appellant.

No. 91–1970.

Supreme Court of Iowa.

June 16, 1993.

R. Patrick Eich and Ronald F. Eich, P.C., Carroll, for appellant.

David Green and Gregory J. Siemann of Green & Siemann, Carroll, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SCHULTZ, and LAVORATO, JJ.

SCHULTZ, Justice.

The marriage of Carla L. Foley and Kenneth P. Foley was dissolved in November 1991, following trial. The parties agreed that Carla should have custody of their children Brett, age 14, and Chastity, age 10. Kenneth appeals from the award of child support, the division of property and award of attorney fees. Carla appeals from the trial court's order to establish a conservatorship for the children. We affirm the decree dissolving the marriage, modify the amount of child support and remove the requirement of a conservatorship.

The Foleys were married in 1985. Kenneth adopted Carla's two children from a previous marriage which was terminated by the death of her first husband. At the time of the marriage, Carla had a net worth of $42,500 and Kenneth had a negative net worth of $1,250.

When this dissolution action commenced both parties were employed. Carla earned a salary of $9,900 per year and Kenneth earned a salary of $30,000 per year. While the dissolution action was pending, Carla's employer closed his business and Kenneth was discharged from his employment for insubordination. Kenneth soon found employment at a similar job in Marshalltown, Iowa, with a salary of $25,000 per year.

Carla drew unemployment benefits until the time of trial and earned approximately $75 per month working as a house painter. She now attends school under a government program. She was also the representative payee for the children and was receiving $1,298 per month in social security benefits from their deceased father's account. Following the divorce, Carla anticipates receiving social security benefits as the children's mother in the amount of $524 per month. When Carla begins to draw these benefits, the children's benefits will be reduced to $1,048 per month.

In arriving at child support, the court applied our child support guidelines, using Kenneth's former income and estimating that Carla's income, with her social security benefits and outside employment, would be $1,001 per month.

Our review is de novo. Iowa R.App.P. 4. We are not bound by the district court's finding of fact but we give it weight. Iowa R.App.P. 14(f)(7).

I. *Property division and attorney fees.* We have carefully considered but find no merit in Kenneth's claim that the trial court's division of property was unjust and inequitable. His claim is primarily based on an alleged $10,000 gift from Kenneth's father towards the parties' purchase of his father's house. The trial court found that the credible evidence was insufficient to establish the gift. We accept this finding as our own. We also find that the trial court did not abuse its discretion in ordering Kenneth to pay $500 for Carla's attorney's fees.

II. *Child support.* Kenneth raises several claims concerning child support. He first urges the children's receipt of social security benefits should relieve his support obligation. Alternatively, he urges the trial court wrongfully deviated from the child support guidelines by (1) using his former, rather than his current, income and (2) failing to consider Carla's receipt of the children's social security payments.

**A.** *Social Security benefits as an offset to support.* Kenneth argues that because the children's social security benefits are nearly double the amount he would pay under the guidelines, the support order is inappropriate and unjust. He cites our decisions in *Newman v. Newman,* 451 N.W.2d 843 (Iowa 1990) and *Potts v. Potts,* 240 N.W.2d 680 (Iowa 1976), for the proposition that child support may be offset by social security benefits the child receives. In both cases, the credited benefits were received from the account of a disabled parent who owed the support obligation. In *Potts,* we recognized the dependency benefits were earned through the parent's payment of social security taxes and "under these circumstances, it is equitable to treat dependency benefits as a substitute for child support for the period during which such benefits are paid." 240 N.W.2d at 681. We do not find equitable concerns in this case that would justify granting Kenneth an offset due to the children's social security benefits flowing from their deceased father's payment of taxes.

Kenneth also claims the trial court failed to give adequate consideration to the ruling in *Boyes v. Boyes,* 247 N.W.2d 265 (Iowa 1976). In *Boyes,* the husband adopted the wife's four children and then two children were born as issues of the parties' marriage. We reversed the trial court's order requiring the husband to pay $20 per week for each of the six children, explaining that the wife was receiving $7,656 per year in social security benefits for the four older children from their deceased father's account. We ordered that the husband pay $319.50 per month for the support of the two youngest children, which would be a sum equal to that received by the mother for the four older children from social security. We recognized the responsibility of the adoptive father for support of his adopted children and provided that if these benefit payments were terminated, the wife could seek modification of provision of the decree for child support. *Id.* at 267.

Carla urges we overrule *Boyes;* however, we believe that subsequent statutory changes erase any precedential value that *Boyes* has on the present case. The stat-utes governing the result in *Boyes* provided that the court should allow "reasonable support or maintenance of any dependent children," Iowa Code section 598.17 (1975), and that the court should make such order "as shall be justified." Iowa Code § 598.21 (1975). In *Boyes,* we concluded the amount the mother would receive under the trial court's order was excessive. 247 N.W.2d at 267. Present section 598.21 has been materially amended and subsection 4(a) now provides that the uniform child support guidelines and criteria should be used to arrive at the amount of support. It also provides a rebuttable presumption that the amount of support resulting from the application of the guidelines is the correct amount to be awarded. These guidelines are mandatory absent a finding by the court that the amount would be unjust or inappropriate. Iowa Code § 598.21(4)(a). The trial court correctly gave no credence to the holding in *Boyes.*

**B.** *Deviation from guidelines.* In ordering child support, the trial court followed our support guidelines adopted in October 1990. The application of the guidelines requires the determination of each parent's net monthly income. Utilizing the two income figures, the court may then determine the appropriate support of the custodial parent.

The amount of computed support is not cast in stone.

> Our guidelines give discretion to the district court in setting child support to adjust the amounts provided by the guidelines "upward or downward ... if the court finds such adjustment necessary to provide for the needs of the children and to do justice between the parties under the special circumstances of the case."

*In re Marriage of Lalone,* 469 N.W.2d 695, 697 (Iowa 1991). To make an adjustment, the court must make "a record or written finding, based on stated reasons, that the guidelines would be unjust or inappropriate." § 598.21(4)(a). We now turn to Kenneth's claims.

Kenneth challenges the trial court's use of his net monthly income from his former, rather than his current employment. A careful reading of the decree reveals the trial court agreed that Kenneth's current income must be used in calculating support. However, the court then found it would be unjust to Carla and the children to base support on Kenneth's current earnings, because the child support obligations are not to be reduced when a party's inability to comply with the support order is self-inflicted. The court concluded Kenneth's termination for insubordination was a self-inflicted reduction in pay.

We agree with the trial court's conclusion that the party's current income must be used in calculating support. We do not agree with its finding that it would be unjust to Carla and the children to set support on Kenneth's current earnings.

The self-infliction rule applies equitable principles to the determination of child support in order to prevent parents from gaining an advantage by reducing their earning capacity and ability to pay support through improper intent or reckless conduct. Iowa case law supports the proposition that in the determination of child support or modification of a support order, a party may not claim inability to pay child support when that inability is self-inflicted or voluntary. *In re Marriage of Dawson,* 467 N.W.2d 271, 275 (Iowa 1991) (father quit job to finish education and take job with less earnings); *In re Marriage of Vetternack,* 334 N.W.2d 761, 762 (Iowa 1983) (father committed felony and incarcerated but still had equity in home); *Ellis v. Ellis,* 262 N.W.2d 265, 267–68 (Iowa 1978) (father's voluntary retirement when he still had substantial earning capacity); *Reed v. Reed,* 260 Iowa 1166, 1168–69, 152 N.W.2d 190, 191 (1967) (father voluntarily quit to return to school); *In re Marriage of Bales,* 439 N.W.2d 228, 230 (Iowa App.1989) (mother quit $15,000 per year job to take one paying $5,900 per year).

On the other hand, we have been willing to modify a decree when the noncustodial parent has been demoted with less salary, *Boquette v. Boquette,* 215 Iowa 990, 992, 247 N.W. 255, 256 (1933); or has been discharged and could not become re-employed at a similar salary, *Nicolls v. Nicolls,* 211 Iowa 1193, 1197, 235 N.W. 288, 289 (1931). Our court of appeals refused to penalize a parent who lost his job and refused to move 1,200 miles to take another job with less security. *In re Marriage of Fidone,* 462 N.W.2d 710, 712 (Iowa App. 1990). It also refused to penalize a husband who was discharged from military service for his failure to comply with weight limits and no longer earned his military pay. *In re Marriage of Drury,* 475 N.W.2d 668, 672 (Iowa App.1991).

While Kenneth's termination for insubordination may not be commendable, it does not qualify as a self-inflicted or voluntary reduction of income that would justify using his former salary in setting child support payments. We believe this scenario is similar to the situations in *Boquette, Nicolls* and *Drury.* While Kenneth was responsible for the loss of his job, we believe he did not intend to deprive the children of support or had a reckless disregard for their well-being. Rather, he acted imprudently and lost his employment but was diligent in obtaining a new job. Consequently, we conclude the trial court erred in its determination to adjust the child support payments upwards using his former salary.

Using Kenneth's present salary, we calculate that his monthly net income is $1,615. We are aware that he received a raise during the week of trial, but this would be offset by the amount he must pay for health insurance. Thirty percent of this monthly net income requires a support payment of $485.

Kenneth also argues that the trial court should have deviated from the child support guidelines because they do not provide for a situation where a child is receiving social security benefits from a deceased parent. However, we note that deviations may be considered when the guidelines would be unjustified or inappropriate. Kenneth argues that application of the guidelines is inappropriate in this case considering his income, his living expenses,

and Carla's income. When we apply the presumption of correctness, compare the income and needs of the parents and children, we find no merit in Kenneth's argument.

■ III. *Conservatorship.* On her appeal, Carla claims the trial court erred in ordering her to establish a conservatorship for the children to manage their social security benefits. She recognizes the authority of the court to protect the children's financial interests, but points out that neither party requested such relief and the Social Security Administration (administration) is responsible for appointing the representative payee and prescribing the payee's discretion in making proper disbursement and investment of such fund.

The trial court gave no reason for its action, except observing that there is only minimal monitoring by the administration of the use of the funds and that the parents have an obligation to support their children without resort to the children's income or assets. The court noted that if there were insufficient funds to support the children, an application could be made through the court to disburse funds from the conservatorship to assist in support.

We believe the trial court has strayed into a field where federal law and agency action are controlling. The administration has appointed a representative payee. This payee is selected under the administration's own rules. 20 C.F.R. § 404.2021. The administration is not required to designate the legal conservator of a beneficiary as his representative payee. Soc.Sec.Rul. 70–42 CB 1966–1970 p. 286. The administration's rules prescribe the accounting for benefit payments. 20 C.F.R. § 404.2065. If the administration learns that the interests of the beneficiary are not served,

> [T]he Social Security Administration alone has the power to enforce the duties of a representative payee through the appointment of a new payee when the current payee "[h]as not used the benefit payments on the beneficiary's behalf in accordance with the guidelines."

*Kriegbaum v. Katz,* 909 F.2d 70, 74 (2d Cir.1990); 20 C.F.R. § 404.2050.

Furthermore, we believe the appointment of a conservator is unnecessary in this case. The children's total sum of social security benefits and child support will amount to $1,533 per month. Carla's expenses, as shown by her financial statement, for herself and the two children are $2,377. The children's share of these expenses would amount to slightly more than the amount of support and social security payments. We recognize that these expenses may not be entirely accurate and a portion of them are used toward payments on the house and automobile. However, because the children have the benefit of the use of this home and vehicle we believe it is appropriate for Carla to receive the social security benefits as representative payee. Consequently, we believe the trial court erred in ordering the conservatorship.

IV. *Summary.* In summary we affirm the trial court decree except we modify the amount of the child support to be paid by Kenneth and the order requiring a conservatorship for the children. On remand, the trial court will modify its decree consistent with this opinion.

**AFFIRMED AS MODIFIED.**