**In re the MARRIAGE OF Sherry L. HESTER and Richard E. Hester, Jr.**

**Upon the Petition of**

**Sherry L. Hester, Petitioner–Appellee,**

**And Concerning**

**Richard E. Hester, Jr., Respondent–Appellant.**

**No. 96–0067.**

Court of Appeals of Iowa.

April 30, 1997.

---

5. The record does not indicate what Mulder paid    for the vehicle.

Michael J. Schilling, Burlington, for appellant.

J. Bryan Schulte of Bauer, Schulte, Hahn & Swanson & Brown, Burlington, for appellee.

Considered by HUITINK, P.J., and STREIT and VOGEL, JJ.

STREIT, Judge.

Richard Hester, Jr. appeals from the district court's order reducing Sherry Hester's child support obligation from $53.55 per week to $25.25 per week after she was fired from her job. He contends the court erred in reducing the award because (1) Sherry's reduction in income was self-inflicted and voluntary, (2) the reduction is inconsistent with prior precedent, and (3) it conflicts with the best interests of the child and public policy.

Richard and Sherry Hester were married on December 12, 1986. Their son, Gregory, was born on August 19, 1987. On March 7, 1991, the court dissolved their marriage, granted Richard primary physical care of Gregory, and ordered Sherry to pay $53.55 per week for child support. At the time of the dissolution, Sherry was a high school graduate, and had completed one semester of college business courses. She was employed as a bookkeeper for her father's business, Harris Plumbing and Heating, and she also worked part-time at Hy–Vee. She earned a gross annual income of approximately $15,500 to $16,000.

In September 1993, Ashley Johnston was born to Sherry Hester and Greg Johnston. Sherry and Greg were not married, and Greg did not provide support for Ashley.

Sherry continued working for Harris Plumbing and Heating until she was terminated in November 1994. Her salary was $350 per week, and her employer contributed approximately $40 per week to a 401(k) plan and provided health insurance. She was terminated for embezzling $2000. Sherry received $361 per month in public assistance from November 1994 until May 1995, when she obtained employment as a cashier at a fast food restaurant earning $4.85 per hour.

On April 19, 1995, Sherry filed a motion to modify the dissolution decree seeking a reduction in the child support obligation, a restructuring of visitation, and an award of attorney fees. The only issue on appeal is the reduction in the child support obligation.

At the time of the modification hearing in November 1995, Sherry had obtained employment at another fast food restaurant, earning approximately $5.25 per hour. She was also training to become a shift supervisor. Additionally, she was receiving $100 per month in public assistance benefits to support Ashley. Greg was still not providing support for Ashley, and his whereabouts were unknown.

The court determined Sherry's net monthly income was $643.83, and Richard's was between $1901 and $2000. The court concluded that following her termination, Sherry conducted a job search, and found she did not possess the necessary computer skills to obtain similar employment as a bookkeeper. It concluded her financial situation warranted modification of the decree because she simply did not possess the skills to obtain a similar position with the same pay. The court reduced Sherry's child support obligation to $25.25 per week.

■ Richard appeals. He argues the court erred in failing to apply *In re Marriage of Foley,* 501 N.W.2d 497 (1993) and *In re Marriage of Phillips,* 493 N.W.2d 872 (Iowa App.1992), rejecting modification based upon self-infliction. Because Sherry was terminated for embezzlement, Richard argues *Phillips* is controlling because it set forth a per se rule that voluntary reduction of income as a result of criminal conduct cannot excuse a parent's support obligation. *See Phillips,* 493 N.W.2d at 877. Finally, he contends reducing Sherry's obligation violates the spirit of the child support guidelines and public policy. He argues Sherry should not be advantaged because of her self-inflicted income reduction.

■ We review the record de novo in a proceeding to modify the custodial provisions of a decree for dissolution of marriage. *In re Marriage of Zabecki,* 389 N.W.2d 396, 398 (Iowa 1986). At the same time, we recognize the virtues inherent in listening to and observing the parties and witnesses. *Id.* Consequently, we give weight to the findings of the trial court, although they are not binding. *Id. See also* Iowa R.App.P. 14(f)(7).

There must be a substantial change of circumstances to warrant modification of child support provisions of a dissolution decree. Iowa Code § 598.21 (1997). In *Phillips,* we found incarceration which results in rendering the obligated parent without financial means was not sufficient to justify modification of child support provisions. *Phillips,* 493 N.W.2d at 877.

Sherry was caught embezzling money from her father's business where she worked. She was terminated from her employment because of this act. There is no evidence that any criminal charges were filed. She was not incarcerated for her filching. Sherry now claims unless her child support obligation is reduced she would be better off unemployed and on public welfare than to continue to work at her $5.25 per hour job.

Sherry's previous employer paid her $350 per week in addition to contributing $40 towards a 401(k) until she was terminated. The district court found Sherry was being overcompensated in the family business in light of her education, training, and experience. The court determined her skills qualify her for minimum wage-type employment and the lower income Sherry now earns, although self-inflicted, is representative of her real worth.

The court found in *Foley:*

The self-infliction rule applies equitable principles to the determination of child support in order to prevent parents from gaining an advantage by reducing their earning capacity and ability to pay support through improper intent or reckless conduct. Iowa case law supports the proposition that in the determination of child support or modification of a support order, a party may not claim inability to pay child support when that inability is self-inflicted or voluntary. *In re Marriage of Dawson,* 467 N.W.2d 271, 275 (Iowa 1991) (father quit job to finish education and take job with less earnings); *In re Marriage of Vetternack,* 334 N.W.2d 761, 762 (Iowa 1983) (father committed felony and incarcerated but still had equity in home); *Ellis v. Ellis,* 262 N.W.2d 265, 267–68 (Iowa 1978) (father's voluntary retirement when he still had substantial earning capacity); *Reed v. Reed,* 260 Iowa 1166, 1168–69, 152 N.W.2d 190, 191 (1967) (father voluntarily quit to return to school); *In re Marriage of Bales,* 439 N.W.2d 228, 230 (Iowa App. 1989) (mother quit $15,000 per year job to take one paying $5,900 per year).

On the other hand, we have been willing to modify a decree when the noncustodial parent has been demoted with less salary, *Boquette v. Boquette,* 215 Iowa 990, 992, 247 N.W. 255, 256 (1933); or has been

discharged and could not become re-employed at a similar salary, *Nicolls v. Nicolls,* 211 Iowa 1193, 1197, 235 N.W. 288, 289 (1931). Our court of appeals refused to penalize a parent who lost his job and refused to move 1,200 miles to take another job with less security. *In re Marriage of Fidone,* 462 N.W.2d 710, 712 (Iowa App. 1990). It also refused to penalize a husband who was discharged from military service for his failure to comply with weight limits and no longer earned his military pay. *In re Marriage of Drury,* 475 N.W.2d 668, 672 (Iowa App.1991).

*In re Marriage of Foley,* 501 N.W.2d 497, 500 (Iowa 1993).

The court in *Foley* found the termination for insubordination did not qualify as a self-inflicted or voluntary reduction of income that would justify using former salary in setting child support payments because the parent did not act in reckless disregard. We find in this case, Sherry's conduct rises to that of reckless disregard.[1] This case is not similar to the situations in *Foley, Boquette, Nicolls, and Drury.* Sherry was solely responsible for the loss of her job. Although we believe she did not intend to deprive her child of support, she acted with reckless disregard for the child's well-being by failing to consider the monetary consequences of her actions.

Sherry's skills and training may only qualify her for minimum wage-type employment. The fact remains, however, that her financial condition today is a result of the criminal act she voluntary committed. We are mindful of the apparent futility of ordering Sherry to pay such support. To do otherwise rewards Sherry for her misdeed. Our courts have recognized modification of a child support obligation should be denied if one's inability to pay child support is voluntary. *In re Marriage of Dawson,* 467 N.W.2d 271, 275 (Iowa 1991). There is no evidence Sherry would not still be employed at Harris Plumbing if she had not stolen money from the company. Because her decrease in income

was self-inflicted, we find a change in circumstances does not exist to modify the child support provision.

The supreme court ordered a request for attorney fees be submitted with the appeal. No attorney fees are ordered on appeal.

**REVERSED.**

---

1. Besides the fact Sherry embezzled $2000 from her father's business, she has also been convicted of forgery, and in an unrelated incident was found to have taken the purse of an employee at Harris Plumbing. Charges were made on a Visa card that was in the purse and the district court determined it was Sherry who signed the receipts for the charges.