2002 SD 6

**Donald Duane WOEHL, Plaintiff and Appellant,**

v.

**Jacqueline Sue Frost WOEHL, Defendant and Appellee.**

**No. 21869.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 2, 2001.

Decided Jan. 16, 2002.

H.I. King of Tonner, Tobin & King, Aberdeen, for plaintiff and appellant.

Jacqueline Sue Frost Woehl, Aberdeen, pro se.

GORS, Acting Justice.

[¶ 1.] Donald Duane Woehl appeals from an order of support adopting the child support referee's report, finding of fact, conclusions of law, and recommendations which base his child support upon his income from a job he was fired from. We affirm.

## FACTS

[¶ 2.] Donald and Jacqueline divorced on February 11, 2000 after ten years of marriage and four children. Donald was ordered to pay $775 per month in child support. This amount was based upon his working 42.5 hours per week at $16 per hour and Jacqueline being at the imputed minimum wage level.

[¶ 3.] On October 13, 2000 Donald filed a petition for modification of child support. He alleged that circumstances had substantially changed because he was "fired from current position." The separation report from his employer indicated that he had been released and discharged for insubordination and work quality.

[¶ 4.] Following a hearing the child support referee filed a detailed report. It reported that Donald had been separated from his position as a mechanic at a Chrysler dealer and now worked in his brother's construction business earning $8 per hour. Donald "acknowledges that he was previously earning a higher income, although he states that he has not voluntarily reduced his income." The report noted:

> Upon Jackie's cross examination of Donald, it was learned that the primary reason for Donald's termination was that he apparently struck a girl friend named Chantelle, who was a co-worker at his place of employment.

[¶ 5.] The referee concluded that:

> Donald .Woehl's position as a mechanic paid $2,773 per month, and has been reduced now to $1,387 per month working for his brother as a carpenter. Don's outburst was a voluntary act, and the negative effects of that act should not be visited upon his children. His income is therefore calculated at $2,773, reduced by $314 in Circular E withholding, $212 Social Security and Medicare, and $139 in retirement at five percent, for a monthly net income of $2,108 imputed to him

The referee recommended that child support be modified to the sum of $774 effective November 1, 2000.

## ISSUE

[¶ 6.] **Did the trial court err in adopting the referee's child support recom-**

mendation which calculated Donald's income based on his income from a job he was fired from?

## DISCUSSION

[¶ 7.] Donald was fired from a job as a mechanic that paid $16 per hour and provided $2773 in monthly income. He found employment at his brother's construction firm for $8 per hour providing $1387 in monthly income. The trial court adopted the referee's recommendation to calculate Donald's child support obligation based upon his former, rather than current, income.

[¶ 8.] Deviation from the child support schedule is allowable based upon "[t]he voluntary act of either parent which reduces that parent's income." SDCL 25–7–6.10(8). Donald contends that his firing was involuntary. Consequently, he believes that his child support should have been based upon his current salary.

[¶ 9.] This Court has not addressed the issue of whether being fired from a job constitutes a voluntary act allowing deviation from the child support schedule. Other courts faced with the issue, however, have taken two differing approaches.

[¶ 10.] The Iowa Supreme Court considered the issue in *In Re Marriage of Foley*, 501 N.W.2d 497 (Iowa 1993). There, Kenneth, the father, had been fired for insubordination. The lower court concluded that the termination was a self-inflicted reduction in pay and used his former income to set child support. The Supreme Court noted that a party may not claim an inability to pay child support when that inability is self-inflicted or voluntary. In Kenneth's case, however,

> While Kenneth's termination for insubordination may not be commendable, it does not qualify as a self-inflicted or voluntary reduction of income that would justify using his former salary in

setting child support payments. We believe this scenario is similar to the situations in *Boquette[ v. Boquette*, 215 Iowa 990, 247 N.W. 255], *Nicolls[ v. Nicolls*, 211 Iowa 1193, 235 N.W. 288] and [*In re Marriage of*] *Drury[*, 475 N.W.2d 668]. While Kenneth was responsible for the loss of his job, we believe he did not intend to deprive the children of support or had a reckless disregard for their well-being. Rather, he acted imprudently and lost his employment but was diligent in obtaining a new job. Consequently, we conclude the trial court erred in its determination to adjust the child support payments upwards using his former salary.

*Foley*, 501 N.W.2d at 500. *See Lee v. Lee*, 459 N.W.2d 365 (Minn.App.1990)(no authority which permits equating willful misconduct with voluntary termination where there is no evidence that the misconduct was an attempt to induce termination and thereby avoid a child support obligation).

[¶ 11.] The Supreme Court of Virginia took a different approach in *Edwards v. Lowry*, 232 Va. 110, 348 S.E.2d 259 (1986). There, John Lowry sought to reduce his child support because he lost his job as a result of his admitted larceny from his employer, a hardware dealer. The Court noted that a party seeking a reduction in child support payments must show that his lack of ability to pay is not due to his own voluntary act or because of his neglect. The Court said that Lowry was attempting to shift to his "child the consequences of his own wrongdoing." *Edwards*, 348 S.E.2d at 261.

> In the case before us, it is undisputed that John Lowry's diminution of income was the direct consequence of his voluntary, wrongful act. After receiving a direct warning from his employer following a previous theft, he was fired for stealing again. He failed to meet the

burden, required by the rule in *Hammers[ v. Hammers*, 216 Va. 30, 216 S.E.2d 20], of showing himself free of responsibility for his change in circumstances, and was not entitled to a reduction in support based upon the diminution of income caused by the loss of his job. (footnote omitted).

*Id. See, In re Marriage of Imlay*, 251 Ill.App.3d 138, 190 Ill.Dec. 539, 621 N.E.2d 992 (4 Dist.1993) (holding that a father's reduction in income due to being fired was due to his deliberate conduct and was not merely a fortuitous occurrence.)

[¶ 12.] This Court has not addressed the precise issue presented here. We have, however, stressed that a parent's duty to support his or her children is the paramount obligation of that parent. *Kost v. Kost*, 515 N.W.2d 209 (S.D.1994).

This Court has a long and consistent history requiring the parents to support their children. Children are "wards of the Court." *Houghton v. Houghton*, 37 S.D. 184, 188, 157 N.W. 316, 317 (1916). The courts in South Dakota are entrusted to be the guardians of the children and to protect their welfare. *Jameson v. Jameson*, 306 N.W.2d 240 (S.D.1981); *Blare v. Blare*, 302 N.W.2d 787 (S.D. 1981); *Houghton, supra.* Parents are obligated to provide support for their children. This obligation is not only a matter of public policy, but is also statutory. SDCL 25-5-18.1; SDCL 25-7-6.1. This Court has stated that a parent's duty to support his children is *paramount* and other debts of the parent are *secondary*. *Park v. Park*, 309 N.W.2d 827 (S.D.1981); *Donohue v. Getman*, 432 N.W.2d 281 (S.D.1988); *Vander Woude v. Vander Woude*, 501 N.W.2d 361 (S.D.1993). This also includes obligations resulting from remarriage. *Donohue, supra; Brunick v. Brunick*, 405 N.W.2d 633 (S.D.1987).

Where child support is concerned, the child's interest is the *primary consideration*. *Regynski v. State of Ariz.*, 414 N.W.2d 612 (S.D.1987).

*Kost*, 515 N.W.2d at 214.

[¶ 13.] In *Kost*, a mother with the purest of motives—attending school full time to improve her income producing capabilities for the ultimate benefit of the child—was not allowed a deviation to reduce her child support obligation. We held:

How then does this paramount obligation square with the desire to improve one's employment status? Should a parent be able to alleviate himself from his child support obligation while attending school to improve his employment status? We must answer this in the negative. This Court has consistently held that the first obligation of any parent is to provide child support, assuming he is physically and mentally capable. To hold otherwise would be to open the floodgates and allow parents who have child support obligations to circumvent these obligations under the guise of returning to school to enhance employment possibilities.

*Kost*, 515 N.W.2d at 214, 215. In dicta we also noted that "the trial court could have considered deviating by virtue of Karen's voluntary act which reduced her income." *Id.* 515 N.W.2d at 215.

[¶ 14.] In this case Donald was fired for insubordination and work quality. He testified that the primary reason he was fired was that he hit his girlfriend who was also a coworker. He admits that his action of hitting was a voluntary act. He claims, though, that it was not intended to result in a reduction of his income.

[¶ 15.] We reject the notion that Donald's underlying conduct and resulting termination of employment cannot be considered voluntary because he did not provoke termination for the express purpose of

avoiding child support. *See Marriage of Foley,* 501 N.W.2d at 500. Donald's primary, paramount obligation is the support of his four children. *Kost,* 515 N.W.2d at 214. Instead of doing everything in his power to maintain his employment, Donald's deliberate, violent acts led to his firing. His firing was neither fortuitous nor beyond his control. Now he seeks to hoist the significant economic ramifications of that on his four children. This cannot be condoned. His actions were voluntary. There was no abuse of discretion in deviating from the child support schedule by using his former income to calculate his current child support obligation.

[¶ 16.] Affirmed.

[¶ 17.] GILBERTSON, Chief Justice, and AMUNDSON and KONENKAMP, Justices, concur.

[¶ 18.] SABERS, Justice, dissents.

SABERS, Justice (dissenting).

[¶ 19.] I respectfully dissent. Unless done with the idea of intentionally reducing one's child support obligation, a child support obligor's termination from employment and loss of greater income should not be viewed as a voluntary act intended to deprive one's children of support. Rather, a child support obligation should be based on an individual's current salary.

[¶ 20.] I submit that this Court should follow the reasoning set forth in *Foley,* 501 N.W.2d 497, and *Lee,* 459 N.W.2d 365. These cases state that "while [the obligor] was responsible for the loss of his job, we believe he did not intend to deprive the children of support or had a reckless disregard for their well-being." *Foley,* 501 N.W.2d at 500. When there is no evidence that the obligor's misconduct represents an attempt to induce termination and avoid a support obligation, a court should not be permitted to use the obligor's former sala-

ry in determining child support. In this case, there is no evidence that Donald's act of striking his girlfriend represented an attempt to induce his termination and avoid his child support responsibility. Accordingly, his child support obligation should be based on his current salary.