In re the **MARRIAGE OF** Tracy
Ann **O'BRIEN** and Bret
Arthur O'Brien.

Upon the Petition of Tracy Ann O'Brien
n/k/a Tracy Ann Nees, Appellee,

And Concerning

Bret Arthur O'Brien, Appellant.

No. 96–261.

Supreme Court of Iowa.

June 18, 1997.

Rehearing Denied July 23, 1997.

James W. Affeldt of Elderkin & Pirnie P.L.C., Cedar Rapids, for appellant.

William F. Olinger of William F. Olinger Law Firm, Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

TERNUS, Justice.

In this case we must decide whether an obligor parent is entitled to a credit against her child support obligation for social security disability benefits paid to her child due to the disability of the parent's current husband, the child's stepfather. We agree with the district court's decision to allow such a credit and so affirm.

I. *Background Facts and Proceedings.*

The record reveals no factual dispute. Appellee, Tracy Ann Nees, formerly known as Tracy Ann O'Brien, and appellant, Bret Arthur O'Brien, were divorced in 1982. Tracy was granted custody of the couple's minor daughter, Brooke, and Bret was ordered to pay child support.

Subsequently, Tracy married Michael Nees and they had two daughters. In June 1994, Michael became disabled and in December applied for social security disability benefits. In his application, he listed Brooke as his stepdaughter and stated she resided in his home.

In March 1995, Brooke began living with her father, Bret. This change gave rise to a modification of the dissolution decree in April 1995. Pursuant to a stipulation between Tracy and Bret, custody of Brooke was transferred to Bret, and Tracy was ordered to pay $200 per month in child support. We assume this figure is below that required by the child support guidelines because the court stated in its order that application of the guidelines would be unjust and inappropriate.[1] The record does not reflect the extent to which the child support set by the court deviated from the guidelines.

Within days of this modification, the Social Security Administration (SSA) granted Michael's application for disability benefits. SSA notified Bret that he had been chosen as Brooke's representative payee because he was Brooke's custodial parent. As a consequence, Bret began to receive the payments to which Brooke was entitled as a result of her stepfather's disability. In early May 1995, Bret received a check in the amount of $1,029.50 representing the benefits Brooke was due from May 1994, when Michael's disability began, through April 1995, when payment of benefits was approved. Thereafter, Bret received $113 each month on Brooke's behalf.

Tracy sought to use these payments as a credit against her monthly support obligation. She claimed the lump-sum payment as well as the monthly payments from SSA should be credited against the support she owed each month. The Child Support Recovery Unit disagreed with her position and ordered mandatory withholding of Tracy's wages. *See* Iowa Code § 252D.1(2) (1995) (allowing Child Support Recovery Unit to enter order for income withholding if obligor is "delinquent in an amount equal to the payment for one month"). Under the order, $200 and $100 were withheld each month for

1. The reasons given by the court for deviating from the guidelines were

Tracy is, at the present time, the sole income provider for her family, Tracy has remarried and has two children by her second marriage, Tracy has agreed to provide transportation both at the commencement and termination of all visitations and because Tracy has agreed that Bret will be able to claim Brooke as an exemption on his tax returns commencing with the calendar year 1995 and further [Bret] has agreed to accept child support in an amount less than the guidelines but still will be able to adequately provide for [Brooke].

her current and delinquent child support obligations, respectively.

Tracy filed a motion to quash the withholding order. *See id.* § 252D.2 (allowing obligor to file a motion to quash the order where "the delinquency did not occur or has been paid"). After receiving testimony, the court ruled it would be inequitable not to allow a credit for Brooke's social security payments, which Brooke receives because her mother is married to Michael and "therefore, in some sense, [are] a result of her mother's situation." In particular, the court noted the lump-sum payment should be credited toward Tracy's support obligation because that payment represented benefits owed during the time Brooke resided with Tracy. Because Tracy was entitled to a credit, she was not delinquent in her obligation. Consequently, the court granted Tracy's motion to quash. Bret appealed.

■ This matter is an equitable action and our review is de novo. *State ex rel. Blackwell v. Blackwell,* 534 N.W.2d 89, 90 (Iowa 1995).

## II. *Entitlement to Credit.*

■ Both parties believe support for their position can be found in our prior cases considering an obligor parent's entitlement to a credit for government benefits received by a dependent child. The factual situation before us, however, is unique. Therefore, our prior cases do not clearly provide a resolution to the present dispute. Nevertheless, a review of these cases sheds light on the considerations that will guide our decision-making process here.

A. *Applicable law.* In *Potts v. Potts,* 240 N.W.2d 680 (Iowa 1976), the obligor father became disabled and his children received social security disability benefits. *Potts,* 240 N.W.2d at 681. These benefits exceeded the father's support obligation during the period in which they were paid by nearly $2000. *Id.* The father sought to have this excess applied as a credit against his prior and subsequent support obligations. *Id.* The obligee mother did not challenge the father's entitlement to a credit to the extent of his child support obligation for the months in which the bene-

fits were paid, but she resisted any credit in excess of the father's obligation for those months. *Id.*

In resolving this dispute, we explained disability benefits are not a mere gratuity:

The benefits have been earned in part through the employee's payment of social security taxes. Their purpose is to replace income lost because of the employee's disability. Under these circumstances, it is *equitable* to treat dependency benefits as a substitute for child support for the period during which such benefits are paid.

*Id.* (emphasis added) (citation omitted). We noted, however, courts generally allow a credit for government dependency benefits only against support obligations owed for the benefit period. *Id.*

As for child support owed prior or subsequent to this period, we agreed with the general rule that "[c]redit of excess payments against a past or future obligation amounts to an irregular variance of the terms of the decree" and "may also frustrate the primary purpose of the social security payments, which is to meet the current needs of the dependents." *Id.* at 682. We concluded, therefore, that "[o]rdinarily a disabled parent should be credited for social security dependency payments only to the extent of his child support obligation during the period such benefits are paid." *Id.*

Notwithstanding our adoption of this general rule, we recognized that it may not apply in an "exceptional case." *Id.* We found *Potts* to be such a case. In *Potts,* the father had failed to make any support payments after he became disabled, presumably due to his inability to work. *Id.* at 681. We held that where an arrearage occurs due to the lapse of time between the disability and commencement of benefit payments, "any excess of payments over obligation during the benefit period may *fairly* be credited against that arrearage." *Id.* at 682 (emphasis added). As for any subsequent arrearage, however, we held "no credit may *equitably* be given against the parent's obligation after his disability has ended." *Id.* (emphasis added).

Our decision in *Newman v. Newman,* 451 N.W.2d 843 (Iowa 1990), also involved depen-

dent children's receipt of social security disability benefits payable because of their noncustodial father's disability. In that case, the monthly benefits exceeded the monthly support owed by the father. *Newman,* 451 N.W.2d at 844. The father sought to recover the sums paid to the mother in excess of his child support obligation.[2] *Id.* We denied his claim, holding "[t]he receipt of excess governmental benefits over the monthly child support obligation is *equitably* deemed a gratuity to the children." *Id.* (emphasis added).

The final case involving payment of government benefits to a dependent child is *In re Marriage of Foley,* 501 N.W.2d 497 (Iowa 1993). This case varies factually from the *Potts* and *Newman* cases in that the social security payments received by the children were due to the death of their biological father. *Foley,* 501 N.W.2d at 498. The parent owing child support and seeking an offset for these payments was the children's adoptive father, Kenneth. *Id.* Kenneth claimed he should not be required to pay child support because the children's social security benefits were nearly double the amount he would owe under the child support guidelines. *Id.* at 499. We pointed out that in *Newman* and *Potts,* "the credited benefits were received from the account of a disabled parent who owed the support obligation," and therefore, it was " 'equitable to treat dependency benefits as a substitute for child support. . . .' " *Id.* (quoting *Potts,* 240 N.W.2d at 681). We did not find the same "equitable concerns" in the *Foley* case "that would justify granting Kenneth an offset due to the children's social security benefits flowing from their deceased father's payment of taxes." *Id.*

Bret, citing our decisions in *Potts* and *Newman,* argues "the determination of whether social security disability payments can offset a parent's child support obligation depends upon whether the payments were

the result of social security taxes paid by the obligor or by someone else." He claims this case is like *Foley,* where we denied an offset for payments that did not originate from the obligor parent's account. Contrary to Bret's interpretation of our prior cases, we have not adopted a rigid rule that a credit is appropriate *only* when the government benefits are paid from the account of the obligor parent, and we decline to do so now. Rather, we think the principle of law to be gleaned from the trilogy of cases reviewed above is that the *equities* of each case determine whether a credit should be allowed. Thus, in considering Tracy's claim to a credit here, we strive for a resolution that is fair and equitable under the circumstances before us, as we did in *Potts, Newman,* and *Foley.*

B. *Tracy's entitlement to a credit.* The benefits paid to Bret on behalf of Brooke are due to the disability of Tracy's husband, Michael. The record shows Michael is permanently disabled and cannot work. The family unit consisting of Michael, Tracy, their two daughters and, initially, Brooke has been deprived of the income Michael would otherwise have been able to earn. Social security disability benefits are being paid "to replace [this] income lost because of [Michael's] disability." *See Potts,* 240 N.W.2d at 681. It is ironic that benefits intended to replace income to the Nees family are being paid to Bret to be used for the support of Brooke, to whom Michael has no legal obligation of support. Brooke receives benefits only because Tracy is married to Michael. Thus, although the benefits are not directly attributable to Tracy, Tracy is responsible for Brooke's receipt of the benefits. Moreover, the benefits paid to Bret are a replacement for the income which Tracy and her family would otherwise have had, were it not for Michael's disability. Under these circumstances, we think it would be inequitable not to grant Tracy a credit for the benefits paid to Bret.[3]

---

**2.** Unlike the father in *Potts,* the disabled parent in *Newman* had made his court-ordered child support payments pending commencement of the government benefits. *Newman,* 451 N.W.2d at 845. Consequently, there was no arrearage to which the excess benefits could be applied, as there was in *Potts. Id.*

**3.** We have not overlooked the fact Tracy's court-ordered support obligation is less than that required by the child support guidelines. At the time child support was set by the court, payment of social security benefits had not been approved. Nevertheless, the court found Tracy was financially able to pay $200 per month in support. Now that Tracy's financial situation has been

■ C. *Amount of credit.* Having concluded Tracy is entitled to a credit, we must also decide the amount of the credit due her. Under the general rule we approved in *Potts*, Tracy should be credited with Brooke's social security benefits to the extent of Tracy's child support obligation during the period such benefits are paid. Therefore, commencing May 1995, Tracy's $200 per month support obligation should be offset by $113, the amount received by Bret from SSA each month.

■ The only remaining issue is whether Tracy is entitled to a credit for the amount by which the initial payment of $1,029.50 exceeded her $200 support obligation for the month in which the lump-sum payment was made. We think this is an "exceptional case" calling for a deviation from the general rule, which would ordinarily preclude a credit. *See Potts*, 240 N.W.2d at 682 (allowing excess benefits to be credited against prior support obligation because of exceptional circumstances). This case is exceptional because Tracy was the custodial parent during the time period represented by the lump-sum payment. (This payment covered the period between the time of Michael's disability and the date social security disability benefits were approved.) Consequently, it was Tracy, not Bret, who was responsible for Brooke's current needs during this time. Had it not been for the fact SSA approved payment of benefits after the court's April modification order, Tracy would have received the lump-sum payment as the custodial parent of Brooke. We think fairness requires, therefore, that these benefits be credited against Tracy's subsequent child support obligation.

### III. *Appellate Attorney Fees.*

■ Whether appellate attorney fees should be awarded depends on several factors: (1) the respective abilities of the parties to pay; (2) the fairness and reasonableness of the requested fees; and (3) whether the

enhanced by the award of disability benefits, a court may conclude she is capable of paying the amount of support required by the guidelines. We think that determination, however, is more appropriately made in the context of a modifica-

party requesting the fees was obligated to defend the district court's decision on appeal. *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). We conclude on the record before us that Bret should contribute $1500 toward Tracy's appellate attorney fees.

### IV. *Summary.*

Tracy is entitled to an offset of $113 against her monthly support obligation of $200 each month Bret receives a payment from SSA. Tracy is also entitled to have the lump-sum payment credited against her support obligation. Because these credits satisfied her child support obligations through August 31, 1995, when the mandatory withholding order was filed, Tracy was not delinquent in her payment of child support as of that date. Consequently, the trial court correctly quashed the withholding order. Tracy is awarded $1500 for her appellate attorney fees.

**AFFIRMED.**

tion action brought by Bret, rather than as a factor influencing whether Tracy is entitled to a credit for the government benefits received by Bret.