# IN THE COURT OF APPEALS OF IOWA

No. 13-1659
Filed August 13, 2014

IN RE THE MARRIAGE OF AMY L. SCHMADEKE
AND THOMAS Z. SCHMADEKE

Upon the Petition of
AMY L. SCHMADEKE,
    Petitioner-Appellant,

And Concerning
THOMAS Z. SCHMADEKE,
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Montgomery County, Jeffrey L. Larsen, Judge.

Appeal from the decree dissolving the parties' marriage. **AFFIRMED AS MODIFIED.**

William R. Hughes Jr. and Robert M. Livingston of Stuart Tinley Law Firm, L.L.P., Council Bluffs, for appellant.

Bruce E. Swanson of Swanson Law Firm, Red Oak, for appellee.

Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**MCDONALD, J.**

Thomas and Amy Schmadeke married in 1994. Four children and eighteen years later, in October 2012, Amy filed her petition for dissolution of marriage, requesting, among other things, child support, an award of spousal support, and an award of attorney's fees. The district court awarded Amy child support in the amount of $1162 per month, spousal support in the amount of $1000 for sixty months, and attorney's fees in the amount of $2000. On appeal, she contends the district court erred by using Thomas's substantially reduced income in calculating child support and spousal support. She also contends the award of spousal support is otherwise inequitable and the attorney fee award was inadequate.

I.

We review dissolution of marriage proceedings de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We examine the entire record and decide anew the issues properly preserved and presented for appellate review. See *id.* While we give weight to the findings of the district court, those findings are not binding. *See* Iowa R. App. P. 6.904(3)(g); *McDermott*, 827 N.W.2d at 676. We afford the trial court considerable latitude in determining spousal support awards. *See In re Marriage of Benson*, 545 N.W.2d 252, 257 (Iowa 1996). We will disturb the district court's ruling only where there has been a failure to do equity. *Id.* We review an award of attorney fees for an abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006).

II.

Amy contends the district court erred in using Thomas's income at the time of the dissolution proceeding in calculating the amount of spousal support and child support. Prior to the filing of this dissolution action, Thomas was employed as a physician's assistant ("PA") at a clinic. He also worked weekends at a local hospital emergency room. His total income from both jobs in 2010, 2011, and 2012 was approximately $195,000–$200,000. Thomas's employment situation changed after Amy filed her petition for dissolution of marriage, and Thomas earned approximately $105,000 on an annualized basis at the time of trial.

We do not find error or inequity in using Thomas's reduced income for the purposes of calculating support. Our courts have held that "[w]hen a person's inability to pay alimony or child support is self-inflicted or voluntary, it will not constitute a ground for reduction of future payments." *Ellis v. Ellis*, 262 N.W.2d 265, 268 (Iowa 1978). However, the reduction in Thomas's earnings is not "self-inflicted or voluntary" within the meaning of our cases. First, the termination of Thomas's employment was not voluntary or done with any intent to reduce his income. Instead, the termination of his employment arose out of work-related conduct. Second, while Thomas was able to obtain new employment with another medical facility at an annual salary of $105,000, he was required to sign a non-competition agreement with that employer. The non-competition agreement precluded Thomas from working his second job at the local hospital. It also precluded him from obtaining similar employment within a thirty-mile

radius of his new employer. This effectively limited his ability to obtain secondary employment. Third, there has been a substantial change in the parties' child care arrangement that effectively limits Thomas's employment. During the course of the marriage Thomas sometimes worked over 100 hours per week between his two jobs to earn the income Amy seeks to have attributed to him. While Thomas was working, Amy served as the children's primary caretaker. The district court awarded Thomas and Amy joint physical care of their children, an award that neither party appeals. Thomas simply is unable to work the number of hours necessary to maintain his past income given the increased role he will play as a joint caretaker. Thomas's reduction in income was not improper or reckless within the meaning of our cases. *See In re Marriage of Foley*, 501 N.W.2d 497, 500 (Iowa 1993).

### III.

Amy also contends the district court erred in "constraining the award of spousal support to rehabilitative alimony, which, by itself, fails to create equity between the Parties." She argues traditional alimony, or alternatively reimbursement alimony is necessary to do equity. Spousal support is a stipend paid to a former spouse in lieu of the legal obligation to provide financial assistance. *See In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005). In addition to traditional alimony, Iowa case law recognizes spousal support awards as a means of rehabilitation or reimbursement for an economically dependent spouse. *See In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008). Rehabilitative alimony was conceived as a way of supporting an economically

dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting. *In re Marriage of Francis*, 442 N.W.2d 59, 63 (Iowa 1989). Reimbursement alimony is predicated on economic sacrifices made by one spouse during the marriage that directly enhance the future earning capacity of the other, and should not be subject to modification or termination until full compensation is achieved. *Id.* at 64.

A party does not enjoy an absolute right to spousal support after dissolution of the marriage. *See* Iowa Code 598.21A(1) (2011) (providing that "the court may grant an order requiring support payments to either party"); *Anliker*, 694 N.W.2d at 540. The criteria for determining support include the length of the marriage, the age and health of the parties, the property distribution, the parties' educational level, the earning capacity of the party seeking support, the feasibility of that party becoming self-supporting at a standard of living comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal. *Id.* We recognize the determination of the need for spousal support and the amount of any such support cannot be reduced to a mathematical formula; the facts and circumstances of each case are too varied for the support determination to be reduced to a table or grid. *See In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009) (stating precedent is of little value because the decision to award support and the determination of the amount of such support is based on the unique facts and circumstances of each case). Instead, the court must equitably balance the spouses' respective prospective

needs and means viewed in the light of the standard of living they enjoyed while married. *See In re Marriage of Tzortzoudakis*, 507 N.W.2d 183, 186 (Iowa Ct. App. 1993) (stating that the parties' needs must be balanced); *In re Marriage of Hayne*, 334 N.W.2d 347, 351 (Iowa Ct. App. 1983) (stating that a party is entitled to receive support only in an amount sufficient to maintain the standard of living previously enjoyed without destroying the other party's right to enjoy a comparable standard of living).

In reviewing the record and the factors contained in section 598.21A, we conclude the award by the trial court failed to do equity. Thomas and Amy were married for nineteen years; the length of the marriage supports an alimony award. *See* Iowa Code § 598.21A(1)(a); *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012). Both parties have undergraduate degrees, but the family relocated on several occasions to advance Thomas's career. Thomas obtained his PA during the marriage with Amy's economic support. *See id.* § 598.21A(1)(d). After Thomas obtained his PA and the parties moved to Madison, Minnesota, the parties discussed whether Amy would continue to work outside the home. They agreed whoever had the better paying job would support the family and the other would stay home to raise the children. *See id.* § 598.21A(1)(e). On several occasions after moving to Iowa, Amy sought and obtained employment outside the home, but the positions were entry level and short-lived because child care arrangements proved too difficult. The parties agreed she would remain the children's primary caretaker.

While neither party likely will have "a standard of living reasonably comparable to that enjoyed during the marriage," Thomas has a better chance of coming close. *See id.* § 598.21A(1)(f). Thomas is forty-two years old, and Amy is forty-three. The parties live in a rural area of the state, which could make finding well-paying employment for Amy, who is without specialized skills such as Thomas's PA, more difficult. *See id.* § 598.21A(1)(j). Given Thomas's income and child support obligation and Amy's earning capacity, the amount of monthly alimony should be increased to $1250 and extended to ten years. We view this as a combination of rehabilitative and reimbursement alimony. *See Becker*, 756 N.W.2d at 827-28 (discussing that a court does not have to designate which type of alimony it awards and may award a combination of different types of alimony).

IV.

We next address the district court's award of attorney's fees. An award of attorney fees rests in the sound discretion of the district court and should not be disturbed on appeal in the absence of an abuse of discretion. *In re Marriage of Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997). Whether attorney fees should be awarded depends on the parties' respective abilities to pay, *see In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006), and fees awarded must be fair and reasonable, *see In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). The court ordered Thomas to pay $2000 in temporary attorney fees, but did not order any additional fees. We cannot say the district court abused its discretion in declining to award additional attorney fees.

Amy seeks an award of appellate attorney fees. An award of attorney fees on appeal is not a matter of right, but rests within the court's discretion and the parties' financial positions. *See In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007); *In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa Ct. App. 1983). "We consider the needs of the party making the request, the ability of the other party to pay," the relative merits of the appeal, and whether the party making the request was obligated to defend the district court's decision on appeal. *Berning*, 745 N.W.2d at 94. We conclude that the parties shall be responsible for their respective appellate attorney fees.

With respect to appellate costs, "[a]ll appellate fees and costs shall be taxed to the unsuccessful party, unless otherwise ordered by the appropriate appellate court." Iowa R. App. P. 6.1207. Appellate fees and costs do not include appellate attorney fees. We direct that all appellate fees and costs be taxed to Thomas. *See Lewis Elec. Co. v. Miller*, 791 N.W.2d 691, 696–97 (Iowa 2010) (stating that it was an "abuse of discretion to divide costs equally between the parties when one party was fully successful on appeal").

V.

For the foregoing reasons, the judgment of the district court is affirmed as modified.

**AFFIRMED AS MODIFED.**