# IN THE COURT OF APPEALS OF IOWA

No. 14-0897
Filed April 22, 2015

IN RE THE MARRIAGE OF DAVID MEYERS
AND ANNA MEYERS

Upon the Petition of
DAVID MEYERS,
    Petitioner-Appellee,

And Concerning
ANNA MEYERS,
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Kathleen Kilnoski, Judge.

Anna Meyers appeals the district court's decree of dissolution and denial of her motion for new trial. **AFFIRMED AS MODIFIED AND REMANDED**

Suellen Overton of Overton Law Office, Council Bluffs, for appellant.

Stephen C. Ebke of Ebke Law Office, Council Bluffs, for appellee.

Considered by Mullins, P.J., and Bower and McDonald, JJ.

**BOWER, J.**

Anna Meyers appeals the property division, child support, and tax exemption provisions of the decree dissolving her marriage to David Meyers. Anna also asks for appellate attorney fees. We affirm as modified and remand for calculation of the child support obligation.

## I.    BACKGROUND FACTS AND PROCEEDINGS

Anna and David were married in 1996. They have four children, three of whom are minors and currently residing with the parties; their placement is not at issue. In the year before their marriage, the couple lived together in a home owned by Anna located in Council Bluffs (Bel-Air Drive home). Shortly after their marriage the couple purchased another Council Bluffs home, which served as their marital residence until their separation in 2013.

At the time of trial, David was fifty-one years old and in relatively good health. David has an associate's degree, and for the past fourteen years David has worked as a support technician in the Children's Hospital's cardiac catheterization lab. David's 2013 W-2 shows an income of $70,297.79.

Anna is forty-seven years old and has suffered seizures, migraines, and has high cholesterol. Anna has a doctorate in nursing practice, which she received in 2010. She works as a professor of nursing practice for three online colleges. She estimates her annual income to be approximately $24,000. Prior to becoming a professor, she worked as a nurse practitioner in a clinical setting. For 2012, she had an income of $67,270, and earned a like amount since 2009. Anna testified she was terminated from her employment because she suffered a

seizure at work. She hired an attorney and was offered her job back on a probationary basis, but declined electing to move to Carson, Iowa, to care for her father who suffers from Alzheimer's.

David filed the petition for dissolution in June 2013, and trial was held in January 2014. Prior to trial, the couple reached an agreement concerning their children. However, they could not agree on issues concerning their respective incomes and the distribution of property. Based on David's W-2, the court found his annual income to be $70,297.79. The court found "Anna's voluntary change in careers ha[d] resulted in a significant decline in her income. Her testimony revealed that her health was not the reason for her decision to reduce her income." For the purposes of child support (based on her income from past years), the court set Anna's income at $67,270. The court set child support and divided the other property, with each party receiving $78,981 in net assets. The court declined Anna's request for a setoff for premarital funds used in the marital home (proceeds of the sale of the Bel-Air home and a personal injury settlement).

In March 2014, Anna filed a motion for new trial. She claimed the property settlement in the decree was not fair and reasonable, the child support provisions were contrary to the law and the evidence submitted, and the court's failure to award her attorney fees was contrary to the evidence. After a hearing the court denied Anna's motion. Anna now appeals from the dissolution decree and the denial of her motion for new trial.

**II.    STANDARD OF REVIEW**

In this equity action involving the dissolution of a marriage, we engage in de novo review. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). Our review involves examining the entire record and adjudicating anew the issues presented. *Id.* We give weight to the district court's factual findings, though they are not binding on us. *Id.* We defer to the district court's opinion regarding the believability of the parties because of the trial judge's superior ability to gauge their demeanor. *In re Marriage of Pundt*, 547 N.W.2d 243, 245 (Iowa Ct. App. 1996).

**III.    ANALYSIS**

**A.    Property Division**

Anna claims the district court's distribution of property was not equitable as the court ignored her pre-marital personal injury assets, the court allocated to her $47,321 of her liquidated retirement account and did not allocate similar funds as a result of David's withdrawal from his retirement account, and the court awarded $2500 in frozen food to her.

Iowa courts strive to divide marital property equitably between divorcing spouses based on the factors set out in Iowa Code section 598.21(5) (2013). But an equitable division is not necessarily an equal division. *In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007). The factors relevant to this case include the length of the marriage; the property brought into the marriage; the contribution of each party to the marriage, giving appropriate economic value to

each party's contribution and homemaking; the earning capacity of each party; and other economic circumstances of each party. *See* Iowa Code § 598.21(5).

### 1.     Pre-Marital Personal Injury Proceeds

The property a party brings into the marriage is a factor to consider in making an equitable division. Iowa Code § 598.21(5)(b). In some instances, this factor may justify a full credit, but it is not required. *In re Marriage of Miller*, 552 N.W.2d 460, 465 (Iowa Ct. App. 1996). A premarital asset is not otherwise set aside like gifted or inherited property. *Id.* Additionally, in considering accumulations to premarital assets, we do not limit our focus to the parties' direct contributions to the increase. *Id.* Rather, we broadly consider the contributions of each party to the overall marriage, as well as all other factors. Iowa Code § 598.21(5). Financial matters make up only a portion of a marriage, and must not be emphasized over other contributions in determining an equitable contribution. *Miller*, 552 N.W.2d at 465.

Prior to the marriage Anna was involved in a car accident and suffered injuries. She sued the driver and received a $53,750 settlement. Anna used these funds to purchase the Bel-Air Drive home. Anna testified the funds from the sale of this house were used in the purchase of the marital home. Anna claims the district court's ruling fails to give her credit for these funds. The court noted in the decree:

> Anna claims she should have a portion of the current marital home that was purchased in 1996 awarded to her as a premarital asset. She produced no documentation to show the amounts, if any, that were actually utilized for the purchase of the marital home from the proceeds of the home she owned before they got married. She did produce a 1099 form from that sale in David's name and

Social Security number. The marital home was placed in joint tenancy in both David and Anna's names when it was purchased.

. . . .

Anna's claim for a setoff for premarital investments in the marital home is hereby denied. Specific reasons for said denial are the lack of any credible information as to the amounts which might be involved, if any, the significant passage of time, and the placing of the marital home in joint tenancy when it was purchased.

In the court's denial of Anna's motion for new trial, it clarified:

The court FINDS that Anna sold her premarital home a few months after the parties married in 1995. David had lived with her in the premarital home for about a year before the marriage, and he contributed toward the household expenses while living with Anna. Anna testified that she was not sure how the proceeds from the sale of that home were distributed, but that she "assumed" that most of those proceeds were used to set up the parties' marital home. She could not recall the amount of the down payment on the marital home, and she had no other evidence about the purchase of the marital home. The 1099 form from the sale of the premarital home showed that the home was in David's name. The marital home was owned jointly by the parties for nearly seventeen years. Given the length of the parties' marriage and the parties' commingling of premarital assets into furnishing and purchasing the marital home, the court finds that no inequity has been done to Anna by failing to set aside any of the premarital assets in her previous home.

Based on our de novo review of the record, we agree with the district court's ruling.

## 2. Retirement Accounts

Anna claims the court's allocation of the proceeds from the parties' various retirement accounts was inequitable. Prior to the parties' separation, Anna withdrew a total of $47,321 from her accounts. Anna testified the funds were used to repay loans from her father and family expenditures. Also prior to their separation, the parties' entered into a written agreement concerning the

distribution of $30,000 in David's retirement policy. The assets were used to pay marital debts listed in the written agreement.

Addressing the retirement funds and the loan, the court reasoned:

> Anna claims there were significant loans totaling $46,600.00 from her father to the parties over the course of their marriage. David disputed her claims that her father loaned the parties significant sums. Anna produced a document which she said was signed by herself and her father dated June 1, 2013. However, the Court also reviewed Exhibit 21, which provides a medical diagnosis about two weeks prior to that date which would significantly undermine the ability of Anna's father to understand this documentation. In addition, this was supposedly signed just three days after Anna and David had entered into the agreement with regard to his 403(b) account and where no mention was made of any of these amounts. Anna admitted in testimony there were no loan documents ever prepared for any of these amounts. The weight of the credible evidence did not support Anna's claims that her father made loans to the parties during the marriage.
> Shortly before and shortly after the separation of the parties, Anna cashed in her retirement accounts which totaled $47,321.65 in payments to her. Of these amounts, she admits $28,000.00 was paid to her father as "repayment" for the loans she claims, and an additional $14,269.00 was utilized to make repairs to the new home her father purchased in Carson, Iowa. There is no evidence these expenses were for marital debts and both amounts should be included in Anna's net asset listing.

We defer to the district court's credibility findings and affirm the district court's distribution of these funds.

### 3.    $10,000 Loan on David's Life Insurance Policy

Anna claims the $10,269.05 loan David borrowed from his life insurance policy should have been included as his asset. We agree. At trial, David testified he took out a $10,000 loan against his Prudential life insurance policy, and he used those funds for living expenses and to repay his parents for a loan for his attorney fees. This occurred before Anna moved out of the marital home. David

was unsure whether he told Anna he took out the loan. When asked to elaborate on what bills he used the loan for, David noted "[l]iving expenses. We were accustomed to her bringing home money, and so we still had food and whatnot to pay, gasoline; all those things."

Upon our de novo review of the record we find the $10,269.05 loan should have been added to David's assets. David's loan suffers from the same lack of support as Anna's withdrawal from her retirement funds, and it would be inequitable to exclude the loan from David's assets. *See* Iowa Code § 598.21(5); *Hansen*, 733 N.W.2d at 702. We modify the district court's property distribution to include the $10,269.05 loan as David's asset. As a result, David shall make an equalization payment of $5135 to Anna within sixty days.

### 4. Food Expenses

Anna claims the inclusion of $2500 in "frozen food" as an asset to her was inequitable. The food expenses were the result of a recent bill to a food coop paid from a jointly held account. Since Anna received physical care of two of the children she received two-thirds of the food, and David received the other one-third of the food. We find the district court's allocation of the "food" was equitable. *See* Iowa Code § 598.21(5); *Hansen*, 733 N.W.2d at 702.

### B. Child Support

Anna claims the district court incorrectly calculated child support by imputing income to her, and by using David's W-2 to calculate his income rather than his year-end pay stub, showing a higher income. Anna contends the court

should not have imputed income because she was fired from her prior employer and is employed in a position which produces substantially less income.

### 1.    Earning Capacity

In determining if it is appropriate to use a parent's earning capacity rather than a parent's actual earnings to meet the child's needs or do justice between the parties, courts will consider whether the parent's inability to earn a greater income is self-inflicted or voluntary. *In re Marriage of McKenzie*, 709 N.W.2d 528, 533 (Iowa 2006). This "self-infliction rule" applies equitable principles to the determination of child support to prevent parents from gaining an advantage by reducing their earning capacity and ability to pay support through improper intent or reckless conduct. *In re Marriage of Foley*, 501 N.W.2d 497, 500 (Iowa 1993).

In the decree, the district court reasoned:

> Anna completed her doctorate in nursing practice in 2010. Until 2012, she had worked as a nurse practitioner in clinical settings. She recently began a new career teaching online nursing courses for three on-line schools. In 2012, she had an income from her previous employer of $67,270.00. In a little over two months of 2013, she had earned $14,982.00 from that same employer. In her testimony, Anna indicates she was terminated from that employment after having a seizure while at work. She hired an attorney and was offered a job back with the company on a probationary basis. She declined that position. She testified that her seizure problem has been resolved by medication. However, she believed that she had an obligation to move in with her father in Carson, Iowa, to help care for him rather than have him reside in an assisted living facility. This move puts her further away from the Council Bluffs/Omaha metro area and the employment opportunities there. Anna testified that she choose to take a significant cut in pay in order to be home with her father and school-age children.
> Anna's voluntary change in careers has resulted in a significant decline in her income. Her testimony revealed that her health was not the reason for her decision to reduce her income.

We find the district court properly imputed income to Anna. The record shows Anna was offered an opportunity to return to her position on a probationary basis, but declined. Instead, Anna took a lower paying position with more flexibility to allow her time to care for her father and children. Anna's change in employment was voluntary, and therefore imputing income to her was proper. *See In re Marriage of Nelson*, 570 N.W.2d 103, 106 (Iowa 1997) ("When a parent voluntarily reduces his or her income or decides not to work, it may be appropriate for the court to consider earning capacity rather than actual earnings when applying the child support guidelines.").

### 2.     David's 2013 Income

Concerning the discrepancy in David's paystub versus his W-2, the court found:

> David produced his W-2 for the year 2013 which shows a gross salary of $70,297.79. Included on that W-2 is a notation as to an additional amount of $12,119.90. In reviewing David's last pay stub for the year 2013, this is the amount of health insurance paid by his company on his behalf. Anna wanted the Court to use the income for David shown on his last pay stub, but it likely includes most, if not all, of this amount paid by the company for insurance and is not actual income to David.

Pursuant to the factors listed in section 598.21(5), we find the district court's calculation of David's income based on his W-2 was equitable.

### 3.     Future Child Support Issues

Anna claims the court failed to provide a step-down in the child support obligation when only one child remains in her home. We agree and remand to the district court for a determination of children support when only one child is eligible for support.

### 4. Tax Exemption

Anna claims the court failed to address the child tax deduction when only one child remains eligible for the exemption. "The 'general rule' is that the parent given primary physical care of the child is entitled to claim the child as a tax exemption." *In re Marriage of Kerber*, 433 N.W.2d 53, 54 (Iowa Ct. App. 1988) (citation omitted)); *see also* Iowa Ct. R. 9.6(5) ("The custodial parent shall be assigned one additional dependent exemption for each mutual child of the parents, unless a parent provides information that the noncustodial parent has been allocated the dependent exemption for such child."). We find based upon the existing law and the facts of this case, Anna shall be awarded the tax exemption.

### C. Appellate Attorney Fees

Finally, Anna requests appellate attorney fees. An award of attorney fees is not a matter of right and rests within our discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). We determine whether an award is appropriate considering the needs of the party seeking the award, the other party's ability to pay, and whether the appeal required a party to defend the district court's decision. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). With these considerations in mind, we award Anna appellate attorney fees in the amount of $1000.

## IV. CONCLUSION

To summarize, we affirm all aspects of the district court's decree of dissolution except David's $10,269.05 loan must be listed as his asset with an

equalization payment made to Anna, the child support obligation for when one child remains in the home must be calculated, and Anna should be granted the tax exemption when only the youngest child may be claimed. We grant Anna's request for appellate attorney fees in the amount of $1000 and assess the costs equally to the parties.

**AFFIRMED AS MODIFIED AND REMANDED.**