# IN THE COURT OF APPEALS OF IOWA

No. 21-0156
Filed January 12, 2022

IN RE THE MARRIAGE OF KATHERINE C. LYGA
AND DALE E. LYGA JR.

Upon the Petition of
KATHERINE C. LYGA, n/k/a KATHERINE C. BANKERT,
        Petitioner-Appellee,

And Concerning
DALE E. LYGA JR.,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Christopher L. Bruns,

Judge.


        Dale Lyga appeals the decree dissolving his marriage to Katherine Lyga.

**AFFIRMED AS MODIFIED.**


        Alexander S. Momany of Howes Law Firm, P.C., Cedar Rapids, for

appellant.

        Kristen A. Shaffer of Shuttleworth & Ingersoll, P.L.C., Coralville, for

appellee.


        Considered by Mullins, P.J., and May and Ahlers, JJ.

**MULLINS, Presiding Judge.**

Dale Lyga appeals the decree dissolving his marriage to Katherine Lyga, now known as Katherine Bankert. He argues the district court erred in placing impermissible contingencies on visitation with the parties' children, severely and unreasonably limiting his visitation, awarding sole legal custody to Katherine, miscalculating his income for purposes of child support, and failing to assign any Arizona debt to Katherine. Katherine requests an award of attorney fees on appeal.

## I.  Background Facts and Proceedings

Dale and Katherine married in 2015. The parties share two young children. Katherine claims there has been emotional, verbal, and physical abuse over the course of the parties' marriage. Several of the incidents have involved Dale consuming large amounts of alcohol. Katherine asserts that Dale has at times threatened to kill her and her parents, using weapons the parties possessed in the marital home.

The parties initially lived in Iowa but moved to Arizona, where Dale secured a lucrative job. As the parties' marriage continued to deteriorate, Katherine made a plan to leave the home with the children and relocate to Iowa. Katherine began proceedings for a protective order in Arizona, but the process was completed following the relocation to Iowa. Katherine and Dale were able to agree to video visits, but Dale missed many. Dale's attempts to visit the children in Iowa were minimal. He eventually relocated to Illinois, incurring $93,000.00 in debt due to bonuses that had to be repaid to his employer in Arizona because Dale did not maintain employment for the contractual length of time.

Katherine petitioned for dissolution of the marriage in April 2020. Trial was held in January 2021. The district court awarded Katherine sole legal custody, granted Dale visitation, and ordered him to pay child support. The court also found Dale had dissipated assets. Dale appeals.

## II.     Standard of Review

We review dissolutions of marriage de novo. *In re Marriage of Miller*, 956 N.W.2d 630, 635 (Iowa 2021). "We give weight to the factual determinations made by the district court; however, their findings are not binding upon [this court]." *Id.* (alteration in original) (quoting *In re Marriage of Mann*, 943 N.W.2d 15, 18 (Iowa 2020)). As to child custody, our principal consideration is the best interests of the children. Iowa R. App. P. 6.904(3)(o); *see In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983).

## III.    Analysis

### A.     Legal Custody

Dale argues the district court erred in failing to grant the parties joint legal custody of the two children. Katherine argues the history of abuse in the family justifies the award of sole legal custody. "'Legal custody' carries with it certain rights and responsibilities, including but not limited to 'decision making affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction.'" *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007) (citation omitted). "A parent who is awarded legal custody has the ability to participate in fundamental decisions about the child's life." *Id.* If either parent asks the court for joint legal custody, a court must consider the factors set forth in Iowa Code section 598.41(3) (2020). Those factors, in relevant part, include:

a. Whether each parent would be a suitable custodian for the child.

b. Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.

c. Whether the parents can communicate with each other regarding the child's needs.

d. Whether both parents have actively cared for the child before and since the separation.

e. Whether each parent can support the other parent's relationship with the child.

. . . .

g. Whether one or both of the parents agree or are opposed to joint custody.

h. The geographic proximity of the parents.

i. Whether the safety of the child, other children, or the other parent will be jeopardized by the awarding of joint custody or by unsupervised or unrestricted visitation.

j. Whether a history of domestic abuse, as defined in section 236.2, exists. In determining whether a history of domestic abuse exists, the court's consideration shall include but is not limited to commencement of an action pursuant to section 236.3, the issuance of a protective order against the parent or the issuance of a court order or consent agreement pursuant to section 236.5, the issuance of an emergency order pursuant to section 236.6, the holding of a parent in contempt pursuant to section 664A.7, the response of a peace officer to the scene of alleged domestic abuse or to the arrest of a parent following response to a report of alleged domestic abuse, or a conviction for domestic abuse assault pursuant to section 708.2A.

. . . .

Iowa Code § 598.41(3).

The district court engaged in a thorough review of the evidence presented at trial, including testimony from Katherine and other witnesses about the history of domestic violence in the home. Katherine's testimony revealed multiple instances when Dale's conduct placed her and the children in physical danger. Testimony also revealed that Dale threatened the lives of Katherine and her parents. The district court found "[t]he evidence established a pattern of physical, emotional and verbal abuse clearly intended to control [Katherine] and prevent her

from leaving the relationship. This pattern included regular threats of violence." It found that a history of domestic abuse was established, triggering a presumption against joint legal custody. *See id.* § 598.41(1)(b). The court then continued its evaluation of the particular facts and circumstances in the record, including Katherine's history as the primary caregiver of the children, her history of providing stable care for the children, credible testimony that Dale has issues with alcohol abuse, and Dale's history of becoming angry when caring for the children. The district court ultimately considered the factors enumerated in section 598.41(3) and awarded sole legal custody of the two children to Katherine.

We review the record de novo, but give weight to the district court's factual findings. *In re Marriage of Kimbro*, 826 N.W.2d 696, 698 (Iowa 2013). Katherine's testimony on the abusive nature of the parties' marriage, although contested by Dale, was credible. The district court's evaluation of the section 598.41(3) factors was thorough and its findings are supported by the evidence in the record. The decree granting sole legal custody of the children to Katherine is in the children's best interest. We affirm the award of sole legal custody to Katherine.

B. Visitation

Dale argues the district court erred in placing contingencies on and limiting his visitation with the children. Katherine argues the district court structured the visitation arrangement to protect the children.

The district court imposed a step-up scheme, which provides Dale with more unsupervised visitation with the children upon successful and consistent exercise of visitation. The geographical location of visits has been limited for an extended period of time to maintain physical proximity to Katherine. Dale is also

barred from consuming alcohol of any type beginning twelve hours prior to visitation and extending until the children are returned to Katherine. Dale has been ordered to either personally transport the children or be physically present when returning the children to Katherine's care so that she "or her designee [may] smell alcohol or see signs of intoxication if Dale has been drinking prior to the exchange."

Iowa Code section 598.41(1)(a) provides that "liberal visitation rights" shall be ordered to

> assure the child the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage, and which will encourage parents to share the rights and responsibilities of raising the child unless direct physical harm or significant emotional harm to the child, other children, or a parent is likely to result from such contact with one parent.

But, a court must evaluate the situation for reasonability and the best interests of children. Iowa Code § 598.41(1)(a). This court has previously stated,

> We *strongly* disapprove, however, of custody provisions, whether stipulated by the parties or mandated by the court, that predetermine what future circumstances will warrant a future modification. A court should not try to predict the future for families, nor should it try to limit or control their actions by such provisions.

*In re Marriage of Thielges*, 623 N.W.2d 232, 237 (Iowa Ct. App. 2000). "Any change of circumstances must be weighed with all the other relevant conditions affecting physical care." *Id.* at 238. Furthermore, "[i]t is well established that the district court is the only entity that can modify a custody or visitation order, subject to the review of the appellate courts." *In re Marriage of Stephens*, 810 N.W.2d 523, 530 (Iowa Ct. App. 2012). However, a self-executing graduated visitation arrangement that fosters rebuilding parent-child relationships may be in the best interests of a child.

On our review of the record, we agree with the district court that under the circumstances of this case, a step-up scheme and geographical limitation impose a reasonable structure to provide safety for the children and are in their best interests, but we find a few of the provisions overreaching. We agree with the district court's decision to protect the children from Dale in the event he has consumed alcohol and agree the children need time to rebuild their relationships with their father through transitional arrangements designed for their protection. But we are troubled by the requirement that the progressive steps for increasing visitation require consecutive visitations, excusable only for illness of the children, and the automatic restarting of the progressive steps for an unexcused failure. It appears obvious that some of the provisions in the decree are efforts to wrest control from Dale and provide more control to Katherine, but our focus must remain on best interests of the children.

Consequently, we modify the visitation provisions to remove the requirement of "consecutive" in each instance, except the consecutive weeks of summer vacation visitation, and modify to remove the "start the count of visitations over" provisions. We also modify said visitation provisions to delete the sentence concerning sanctions for contempt and the sentence that follows.[1] If Dale fails to regularly exercise visitation as ordered, he risks jeopardizing his relationship with his children.

---

[1] This is not intended to limit the available remedies in the event of a violation of visitation provisions.

C.    Child Support

Dale argues the district court erred in calculating his income for the purposes of child support.  A parent has a duty to support children financially based on the parent's ability to pay.  *In re Marriage of Salmon*, 519 N.W.2d 94, 97 (Iowa Ct. App. 1994).  Iowa courts have used average earnings rather than a parent's actual earnings for purposes of calculating child support when that parent's income is, or has been, subject to fluctuation.  *In re Marriage of Hagerla*, 698 N.W.2d 329, 332 (Iowa Ct. App. 2005).  "Iowa case law supports the proposition that in the determination of child support or modification of a support order, a party may not claim inability to pay child support when that inability is self-inflicted or voluntary."  *In re Marriage of Foley*, 501 N.W.2d 497, 500 (Iowa 1993) (collecting cases).  The spirit of that proposition is "to prevent parents from gaining an advantage by reducing their earning capacity and ability to pay child support through improper intent or reckless conduct."  *Id.*

Even though Dale relocated following the parties' separation and got a job in Illinois earning less money than when he lived in Arizona, there is no evidence that the income reduction was aimed at reducing his child-support liability.  Dale testified that the relocation was an effort to be geographically closer to his children and make in-person visits more affordable and, thus, more frequent.  Dale does not contest the fact that the $118,000 salary listed on his job offer letter was used by the district court.  He argues the additional $13,722 he receives in installments of $527 every two weeks as a license premium should not have been added to his annual salary.  The record shows that throughout his history of employment, Dale has consistently received premium payments in addition to his annual salary.  *See*

*In re Marriage of Brown*, 487 N.W.2d 331, 333–34 (Iowa 1992). There is nothing in the record to suggest that the additional income will be discontinued. Finding that the district court's decision to add the premium payments to his annual salary is not speculative, but rests on a consistent pattern of payment, we agree with the district court's calculation of Dale's income for the purposes of calculating child support. *Id.*

D.    Debt

Dale argues the district court erred in failing to distribute any of the $93,000 debt from the family's relocation to Arizona, and Dale's return to the Midwest, to Katherine.

The district court found the following facts regarding the debt. "Had [Dale] stayed just a few months longer [in Arizona] he would have avoided any obligation to pay back relocation funds of $63,588.74. If he had stayed just a little over a year longer he would have avoided the obligation to pay back $30,000.00 in sign-on bonuses." The district court then found "that Dale dissipated the marital estate by incurring the debt." The court noted the benefit and purpose of the debt was for Dale and that "there was not a great need for this expenditure and it was an extravagant amount." Finally, the district court noted that Dale's move in December 2020 did not ultimately serve its purpose—he was unable to exercise more than a handful of in-person visits because of COVID-19 restrictions and the visitation center's availability.

"We have previously held dissipation of assets is a proper consideration when dividing property." *In re Marriage of Fennelly*, 737 N.W.2d 97, 104 (Iowa 2007). In evaluating whether assets have been dissipated, "courts must decide

'(1) whether the alleged purpose of the expenditure is supported by the evidence, and if so, (2) whether that purpose amounts to dissipation under the circumstances.'" *Id.* (quoting Lee R. Russ, *Spouse's Dissipation of Marital Assets Prior to Divorce as Factor in Divorce Court's Determination of Property Division*, 41 A.L.R. 4th 416,421 (1985)). The second prong requires the court to consider factors including:

> (1) the proximity of the expenditure to the parties' separation, (2) whether the expenditure was typical of expenditures made by the parties prior to the breakdown of the marriage, (3) whether the expenditure benefitted the "joint" marital enterprise or was for the benefit of one spouse to the exclusion of the other, and (4) the need for, and the amount of, the expenditure.

*Id.* (citations omitted). Debt acquired by one party over several years may be classified in part as waste and in other part legitimate expenses. *Id.* at 105–06. Debt classified as waste is set aside as debt for the spending party and is not considered in the distribution of property. *Id.* at 106.

Dale asserts that he incurred the debt in leaving his job in Arizona to avoid spending approximately $1000 per visit to see the children in person. Katherine did not contest that testimony. The debt was incurred following the parties' separation, after Katherine secured a protective order allowing Dale only supervised visitation with the children. The stipend was provided based on the decision of both Dale and Katherine to move to Arizona, but the debt was incurred unilaterally, with no input from Katherine. In fact, it was incurred after Katherine fled the marital home with the children. Dale incurred the debt to avoid incurring other debt—which would be attributable only to Dale in his efforts to exercise visitation with the children. And as the district court pointed out in a footnote, he

could have made ninety-three visits to the children for the same cost. We agree with the district court that Dale was unable to rebut Katherine's proof that he dissipated the assets and that it should be his responsibility to repay.

### E.    Appellate Attorney Fees

Katherine requests an award of appellate attorney fees, arguing that she has been forced to use funds to support the children and pay her attorney, and requests an award of at least $7500. "Appellate attorney fees are not a matter of right, but rather rest in [the appellate] court's discretion." *In re Marriage of Okland*, 669 N.W.2d 260, 270 (Iowa 2005). Appellate courts are tasked with considering factors including "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (quoting *Okland*, 399 N.W.2d at 270). We determine Katherine is entitled to an award of some appellate attorney fees, but because Katherine's affidavit of attorney fees does not include an itemization of fees incurred, we remand to the district court to determine a reasonable award of appellate attorney fees upon an application for fees supported by an itemization of fees and expenses, to which Dale may file a response. *See In re Marriage of Heiar*, 954 N.W.2d 464, 473–74 (Iowa Ct. App. 2020). Costs on appeal are assessed to Dale.

## IV.    Conclusion

On our de novo review of the record, we agree with the district court that it is in the best interests of the parties' children to award sole legal custody to Katherine. We also agree that the step-up visitation plan is in the best interests of the children, subject to our modifications set forth above. We agree with the district

court that Dale unilaterally incurred the $93,000 debt when he relocated from Arizona to Iowa for his own purposes and benefit. Thus, the order that the debt be assigned to Dale is affirmed. We remand to the district court the issue of appellate attorney fees, and we tax costs to Dale.

**AFFIRMED AS MODIFIED.**